Argued March 2, affirmed April 8, 1970

# SORENSEN, *Appellant, v.* TILLAMOOK COUNTY, *Respondent.*

467 P. 2d 433

*Gary M. Bullock,* Portland, argued the cause for appellant. With him on the briefs were Lent, York, Paulson & Bullock, Portland.

*Joe Bailey,* Hillsboro, argued the cause for respondent. With him on the brief were Carrell F. Bradley and Schwenn, Bradley & Batchelor, Hillsboro.

TONGUE, J.

This is an action for damages for personal injuries sustained by plaintiff when the caterpillar tractor which he was driving fell through a bridge owned by Tillamook county over the Salmonberry River. ORS 368.935 then (in 1964) permitted recovery against the county of damages up to $2,000 for injuries sustained "while lawfully travelling" on a county road or bridge.

The court below denied recovery, after a trial without a jury, upon the ground that plaintiff's tractor was not lawfully upon the bridge because of statutes prohibiting the operation upon public roads of vehicles in excess of specified weights and vehicles with cleated tracks, unless actually engaged in work on such roads. Plaintiff appeals.

Plaintiff had contracted with the Oregon State Board of Forestry to log two tracts of timber, one on each side of the Salmonberry River, and adjacent to the county road. The timber was owned by Tillamook county, but was managed by the State Board of Forestry. The written contract included the removal of certain trees overhanging the road which were considered to be hazardous and also provided that any damage to the road would be repaired by plaintiff.

The accident occurred on the last day of the contract term. Plaintiff had by then completed logging the tract on the west side of the river, where he had a "landing" adjacent to the road. He had also completed logging the tract on the east side of the river, including the trees overhanging the road. The tractor was then on the east side of the river.

Some time before moving his tractor back to the west side of the river plaintiff consulted an assistant county roadmaster named Ewan, who had the respon-

sibility for maintenance of that county road. One reason for talking to Ewan was that plaintiff wanted approval of the work to be done in cleaning up the dirt on the road at the "landing", as required by the contract. A further reason was that plaintiff suggested to Ewan that before moving his tractor across the river, and as "a favor" to the county, he would be willing to remove two windfalls along the road, as well as a large rock near the road. Ewan approved the suggestions, and also told plaintiff not to ditch the road at the "landing" on the west side of the river, but to "just clean it out".

With reference to use of the bridge, plaintiff testified that in his conversation with Ewan, he told Ewan that after removing the windfalls and the rock he would then cross the bridge with his tractor and clean out the dirt on the road at the "landing". This was denied by Ewan, who testified that crossing of the bridge by plaintiff's tractor was not discussed.

Plaintiff admitted, however, that he did not ask Ewan for permission to cross the bridge with his tractor and that he later learned of a ford near the bridge where tractors could cross the river. It is also undisputed that Ewan's duties did not include the issuance or denial of permits for use of county roads by tractors and that plaintiff did not request or discuss any kind of a permit.

The distance from the rock and windfalls, as removed by plaintiff's tractor on the east side of the river, to the "landing" on the west side of the river, where the dirt on the road was to be cleaned up, was between one-quarter and one-half of a mile. Plaintiff's caterpillar tractor was a D-8 model, with 10 feet of track, weighing over 40,000 pounds, and was substanti-

ally over-weight for a vehicle of that length, under provisions of ORS 483.524(3). It was also fitted with metal cleats or "grousers". There was testimony that heavier vehicles had crossed the bridge, but there was no testimony whether such crossings were made unlawfully or under special permit. Plaintiff had no written permit from the county to operate the tractor on the county road or bridge, unless his logging contract be construed to be such a permit.

The controlling statute in this case is ORS 483.502, which provides, in part, as follows:

> "(1) *No person shall drive or move* and no owner shall cause or permit to be driven or moved *on any highway, any vehicle* or combination of vehicles *of a size or weight exceeding the limitations* set forth in ORS 483.502 to 483.536, *or any vehicle* or combination of vehicles which are *not constructed or equipped as required* in those sections, or under the rules and regulations of the State Highway Commission, county courts or boards of county commissioners, or city councils, adopted pursuant thereto.
>
> &ast; &ast; &ast; &ast; &ast;
>
> "(3) *The provisions* of ORS 483.502 to 483.536 governing size and weight *do not apply to any vehicle,* combination of vehicles, article, machine or other equipment *while being used by* the Federal Government, *the State* of Oregon, *or any county* or incorporated city *in the* construction, *maintenance or repair of public highways, and at the immediate location or site* of such construction, maintenance or repair.
>
> &ast; &ast; &ast; &ast; &ast;" (Emphasis added)

As previously noted, the weight of plaintiff's tractor exceeded the limits provided by ORS 483.524(3). In addition, ORS 483.516 prohibits the operation of vehicles on any public highway "unless equipped with

pneumatic tires" and ORS 483.518 prohibited such operation of vehicles with metal cleats except for vehicles "actually engaged at the time in construction or repair of highways * * *".

■ Plaintiff would escape the terms and effect of these statutes by contending that the plaintiff, while on the bridge, was engaged in the "maintenance or repair" of a public highway and was *at the "immediate location or site* of the maintenance and repair." As previously stated, however, the distance from the site of plaintiff's removal of the windfalls and the rock on the east side of the river to the site of the road work to be done at the "landing" on the west side of the river was between one-quarter and one-half mile. Thus, the trial court could properly find that while plaintiff's tractor was in transit between these two sites it was not "being used" in road maintenance or repair work. In any event, under these facts, the trial court could properly find that while crossing the bridge en route from one to the other of these sites plaintiff's tractor was not "at the immediate location or site" of the maintenance and repair work. (Cf. *State v. Foster,* 222 Or 103, 107, 352 P2d 502 (1960)).①

■ In addition, and as held in *State v. Foster,* the exception provided by ORS 483.524 extends only to vehicles *"used by"* the state or county, and does not extend to vehicles owned and used by private parties, even while under contract with the state or county.

■ It follows that since plaintiff's tractor was overweight and was fitted with metal cleats or "grousers",

---

① Although the trial court made findings substantially to this effect, such findings were, by mistake, made under ORS 483.032 (2). It is conceded on this appeal, however, that "the court should have based its opinion on ORS 483.502(3)."

it was not "lawfully travelling" on the county bridge at the time and place of the accident. It also follows that plaintiff is barred from recovery for injuries sustained upon the collapse of that bridge.

■ Plaintiff also contends that "the only reason plaintiff was on the defective bridge was because he had to cross it to log some trees on the east side of the river which were hanging over the county road and endangering people who might be travelling down it", and that the logging of such trees was road maintenance work. Even if that be true, it does not follow that while returning from the performance of that work plaintiff's tractor was still being "used by" the state or county, and in road maintenance work, at "the immediate location or site" of such work. Moreover, as previously noted, there was testimony that a ford across the river was available, thus removing the necessity of crossing the bridge.

■ It is also contended by plaintiff that even if he was not engaged in road maintenance work at "the immediate location or site" of such work at the time of the accident, so as to qualify under the exception provided by ORS 483.502, the state or county could issue a permit for operation on a county road of a tractor of excessive weight and with cleated treads. Thus, plaintiff contends that his written logging contract with the State Board of Forestry was, in effect, such a permit. Similarly, it is contended that the assistant roadmaster of Tillamook county, Mr. Ewan, gave oral permission to take the tractor over the bridge.

Plaintiff has cited no statute or other authority for the proposition that either state or county officials has authority to issue permits or otherwise grant permission for the operation on county roads of tractors

of such excessive weight and with cleated treads. On the contrary, ORS 483.520 and 483.524, authorizing the state or county to grant written permits for operation of heavy equipment over state and county highways or roads, expressly provide that in the granting of such permits the granting authority must observe the maximum gross weights provided by ORS 483.524 (3). That statute provided a maximum gross weight of 36,000 pounds for vehicles with a length of up to eleven feet between axles. Plaintiff's tractor, weighing over 40,000 pounds, exceeded this maximum weight. Furthermore, no provision is made for authority to issue permits for the operation on a state or county highway or road of tractors with cleated treads, contrary to the express provisions of ORS 483.516—the only exception being for vehicles actually engaged in road work. (ORS 483.518(1)(a)).

Even if the state or county had authority to issue written permits or otherwise grant permission for the operation of plaintiff's tractor on this county road and bridge, plaintiff failed to offer evidence sufficient to establish such facts. The written logging contract with the state contained no such provision. Nor could that contract be so construed with the aid of the testimony offered by plaintiff.

■ Similarly, plaintiff failed to prove that the assistant county roadmaster had authority to issue such permits and, in any event, the evidence was insufficient to establish that Mr. Ewan attempted to grant such authority, for reasons previously stated.

While we may agree that it is unfortunate that counties are protected from liability in such cases for injuries resulting from defective county roads and bridges, plaintiff makes no contention that this court

may impose such liability, except to the extent and under the conditions provided by statute.

Plaintiff has also attempted to assign as error the exclusion of two offers of testimony by one of the plaintiff's witnesses relating to the reason for removal of timber overhanging the county road, the practices of the State Board of Forestry, and the meaning of the logging contract with reference to road maintenance work. These two assignments of error do not comply with the requirements of Rule 19 of this court and Appendix B of such rules. Since, however, offers of proof were made by plaintiff we have considered both of these assignments, including the testimony offered by plaintiff, and find them to be without merit.

Affirmed.