Argued and submitted November 30, 2022, reversed and remanded
September 27, 2023

M. C.,
individually, and
Ryan Colpitts,
individually,
*Plaintiffs-Appellants,*

*v.*

QUEST GLOBAL, INC.,
dba Quest Trucking,
a foreign business corporation,
*Defendant-Respondent.*

Jackson County Circuit Court
20CV34288; A176038

537 P3d 571

Plaintiffs appeal from an order of the trial court dismissing their case for lack of specific personal jurisdiction, arguing that the trial court erred when it concluded that defendant Quest Trucking (Quest) did not have sufficient minimum contacts with Oregon to support personal jurisdiction. *Held*: The Court of Appeals held that Quest had sufficient minimum contacts with Oregon to support personal jurisdiction due to Quest directing an employee to dismiss a stalking protective order issued by an Oregon court or else lose her job, then terminating her employment when she did not do so. The court further concluded that litigation arose out of those contacts and that Quest did not carry its burden to demonstrate that an exercise of jurisdiction would not comport with fair play and substantial justice.

Reversed and remanded.

Timothy C. Gerking, Judge.

Julie A. Smith argued the cause for appellants. Also on the briefs were Matthew Rowan, Collins Rowan LLP and Cosgrave Vergeer Kester LLP. Also on the reply brief were Shayna M. Rogers and Mackenzie E. Lang.

Sean P. Tipton argued the cause for respondent. Also on the brief were Tracy M. McGovern and Frohnmayer, Deatherage, Jamieson, Moore, Armosino & McGovern, P. C.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Reversed and remanded.

**HELLMAN, J.**

Plaintiffs M and Ryan Colpitts appeal from an order of the trial court dismissing their case for lack of specific personal jurisdiction over defendant Quest Trucking (Quest). They argue that the trial court erred when it concluded that Quest did not have sufficient minimum contacts with Oregon to support personal jurisdiction. According to plaintiffs, Oregon has specific personal jurisdiction over Quest because Quest employs Oregonians as truck drivers, conducts business in Oregon, and sought to avail itself of Oregon's judicial system by instructing M to dismiss a stalking protective order issued by an Oregon court for the purpose of furthering its own business interests. Quest responds that the trial court did not err, because Quest did not purposefully avail itself of the privilege of conducting business in Oregon, and that even if Quest did purposefully avail itself of Oregon, the litigation does not arise out of those activities. We reverse. As more fully explained below, when Quest gave M an ultimatum to dismiss her stalking protective order or else lose her job, Quest engaged in intentional actions with a meaningful connection to Oregon, thereby creating sufficient minimum contacts to support specific personal jurisdiction.

## I.   FACTS

Quest is a trucking company based in Cartersville, Georgia. Quest serves three shipping terminals in Oregon but none of those terminals is owned or operated by Quest. Because only a small portion of Quest's business is conducted in Oregon, the company considers Oregon to be a "pass-through state." In 2019, about 3.2 percent of the total miles driven by Quest's drivers were within Oregon. Quest employs over 330 drivers of which five claim Oregon residency. As a matter of policy, Quest allows its drivers to adjust their routes to accommodate trips through a specific location, provided that they request to do so over a week in advance so that Quest can shift schedules and routes to accommodate the request.

Plaintiffs are a mother and son driving team, who were employed by Quest for about three months during 2019. Plaintiffs reside in Gold Hill, Oregon. They attended

an orientation at Quest's headquarters in Cartersville, Georgia, whereupon Quest offered M a job as a driver and Ryan a job as a trainee. During orientation, plaintiffs completed their human resources paperwork. They requested that Quest directly deposit their paychecks and that payroll statements be emailed to them. Within days of receiving her job offer, M disclosed to Quest that she has a stalking protective order (SPO) against another Quest employee who also lives in Gold Hill, Oregon.

Upon completion of orientation, Quest provided plaintiffs with a truck and they began driving for Quest as at-will employees. For their first cross-county trip, plaintiffs requested that they be routed through Gold Hill to pick up personal effects and to dismiss the SPO. Quest accommodated that request, as well as a subsequent request to route through Oregon, but M did not dismiss the SPO. Plaintiffs continued driving for Quest, but the existence of the SPO, and plaintiffs' continued requests to route through Gold Hill, "left Quest in the untenable position of coordinating interstate trucking schedules between employees who wished to take leave time in [the] Gold Hill location while an active [SPO] remained in place between two of the employees." The SPO was problematic for Quest because it "required Quest to coordinate travel times, routes, and layovers to prevent contact between employees, a complex task given Quest's interstate travel and expedited shipping obligations." In early September 2019, during a phone call between plaintiffs and Quest, a Quest representative told M that it was her understanding "that if [M] did not get [the SPO] dismissed then [M] would lose [her] job." About a month later, Quest notified plaintiffs that their employment had been terminated. Quest arranged for their truck to be transported back to Georgia and for a rental vehicle to transport plaintiffs and their belongings to a destination of their choosing. At the time of their termination, plaintiffs had driven 39 trips for Quest totaling 35,587 miles of which about 1,681 miles, or about 4.7 percent, were driven in Oregon.

## II.   STANDARD OF REVIEW

Plaintiffs assign error to the trial court's order dismissing their case for lack of specific personal jurisdiction

over Quest. Whether Oregon has specific personal jurisdiction over a party is a question of fact and law. *Cox v. HP Inc.*, 317 Or App 27, 31, 504 P3d 52, 55 (2022), *rev den*, 369 Or 705 (2022) (*Cox II*). "'[I]n determining whether a defendant is subject to the jurisdiction of an Oregon court, courts look to the pleadings and affidavits of both parties.'" *Munson v. Valley Energy Investment Fund*, 264 Or App 679, 700, 333 P3d 1102 (2014) (quoting *Nike USA, Inc. v. Pro Sports Wear, Inc.*, 208 Or App 531, 533, 145 P3d 321 (2006)). "The burden is on the plaintiff to allege and prove facts sufficient to establish jurisdiction over a particular defendant." *Robinson v. Harley-Davidson Motor Co.*, 354 Or 572, 576, P3d 287 (2013), *abrogated in part on other grounds by Cox v. HP Inc.*, 368 Or 477, 494 P3d 1245 (2021) (*Cox I*). "We review the trial court's factual findings to determine whether they are supported by any competent evidence." *Nike USA, Inc.*, 208 Or App at 536 (internal quotation marks omitted). In so doing, we construe pleadings and evidence liberally to support jurisdiction. *Munson*, 264 Or App at 700. Once the jurisdictional facts have been established, we review the trial court's ruling on personal jurisdiction for legal error. *Nike USA, Inc.*, 208 Or App at 536.

## III.   LEGAL FRAMEWORK

Under ORCP 4 L—the catchall provision of this state's long-arm statute—Oregon may exercise specific personal jurisdiction over a defendant "in any action where prosecution of the action against a defendant in this state is not inconsistent with the Constitution of this state or the Constitution of the United States." "In determining whether a court may exercise jurisdiction over a defendant under ORCP 4 L, [we are] guided by decisions of the Supreme Court of the United States regarding the constitutionality of such exercise under the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States." *State ex rel Circus Circus Reno, Inc. v. Pope,* 317 Or 151, 156, 854 P2d 461 (1993) (*Circus Circus*). Thus, for Oregon to exercise specific personal jurisdiction over a defendant, there must be "minimum contacts" between the defendant and Oregon. *World-Wide Volkswagen Corp. v. Woodson*, 444 US 286, 291-92, 100 S Ct 559, 62 L Ed 2d 490 (1980); *Circus Circus*, 317 Or

at 159-60. In determining whether those contacts exist, we look to three considerations. *Circus Circus*, 317 Or at 159-60. First, we determine whether the defendant "purposefully availed" itself of the privilege of conducting activities in Oregon or "purposefully directed" its activities at residents of Oregon. *Cox I*, 368 Or at 496 (explaining that a minimum contact is established when "the defendant takes some act by which it purposefully avails itself of the privilege of conducting activities within Oregon" (internal quotation marks and brackets omitted)); *Circus Circus*, 317 Or at 159 (explaining that minimum contacts "will be found where the defendant has purposefully directed its activities at residents of the forum state" (internal quotation marks omitted)). If a contact exists, then we next consider whether the litigation "'arises out of or relates to'" that contact. *Circus Circus*, 317 Or at 159 (quoting *Burger King Corp. v. Rudzewicz*, 471 US 462, 472, 105 S Ct 2174, 85 L Ed 2d 528 (1985)). If both of those prerequisites are met, then we consider whether exercising jurisdiction over the defendant would comport with "'fair play and substantial justice.'" *Circus Circus*, 317 Or at 159-60 (quoting *Burger King Corp.*, 471 US at 476-77).

## A.   *The "Minimum Contacts" Prong*

A foreign defendant's activities within Oregon rise to the level of "minimum contacts" when the defendant has "purposefully availed" itself of the privilege of conducting activities in Oregon or "purposefully directed" its activities at residents of Oregon. *Cox I*, 368 Or at 496; *Circus Circus*, 317 Or at 159. The minimum contacts requirement exists to prevent foreign defendants from being haled into local courts because of "random, fortuitous or attenuated contacts" with the forum state or the "unilateral activity" of a plaintiff. *Burger King Corp.*, 471 US at 475-76 (internal quotation marks omitted). Put another way, the defendant must have "deliberately reached out beyond its home" by engaging in some act in the forum state. *Ford Motor Company v. Montana Eighth Judicial District Court*, 592 US ___, 141 S Ct 1017, 1024-25, 209 L Ed 2d 225 (2021) (internal quotation marks omitted). The act or acts must create a *substantial* connection with the forum state and must have been created by the "'defendant *himself*[.]'" *Walden v. Fiore*, 571

US 277, 284, 134 S Ct 1115, 188 L Ed 2d 12 (2014) (quoting *Burger King Corp.*, 471 US at 475) (emphasis in original); *see also Robinson*, 354 Or at 592 ("[A] defendant's activities must bear a meaningful relationship to the scope of the benefits and protection received from the forum state."). "[M]ere injury to a forum resident is not a sufficient connection to the forum." *Walden*, 571 US at 290.

B.   *The "Arising Out of or Related To" Prong*

        Even if a defendant's actions in the forum state are significant enough to constitute minimum contacts, that alone is not enough to give rise to specific jurisdiction in the forum. The litigation must also arise out of or relate to those minimum contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 US 408, 414, 104 S Ct 1868, 80 L Ed 2d 404 (1984); *Burger King Corp.*, 471 US at 472-73. The contact does not need to be the "but for" cause of the litigation, so long as the defendant has "systemically served the state's markets [such] that the reach of its actions did in some way 'relate to' the claims." *Cox II*, 317 Or App at 33. However, if the contact is the "but for" cause of the litigation, that is not enough to satisfy the "arising out of or related to" requirement. The "nature and quality" of the contact must also make it "reasonably foreseeable" that the nonresident defendant would be "haled into court in Oregon" to answer the specific allegations. *Cox I*, 368 Or at 496-97 (internal quotation marks omitted). Whether the litigation was reasonably foreseeable is an objective determination. *Cox I*, 368 Or at 494 (citing *Robinson*, 354 Or at 594). Importantly, even a single contact with Oregon can support specific personal jurisdiction. *See, e.g.*, *O'Neil v. Martin*, 258 Or App 819, 312 P3d 538 (2013), *rev den*, 255 Or 381 (2014), *abrogated on other grounds by Alfieri v. Solomon*, 358 Or 383, 365 P3d 99 (2015) (finding specific personal jurisdiction over a defendant corrections officer for reading and confiscating one package).

C.   *The "Fair Play and Substantial Justice" Prong*

        Lastly, even if the first two prongs are satisfied, Oregon may exercise jurisdiction over a foreign defendant only if doing so "would comport with fair play and substantial justice." *Burger King Corp.*, 471 US at 476 (internal

quotation marks omitted). Under the third prong, the burden shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Munson*, 264 Or App at 699 (internal quotation marks omitted); *see also Swank v. Terex Utilities, Inc.*, 274 Or App 47, 65, 360 P3d 586 (2015), *rev den*, 358 Or 551 (2016) ("If under ORCP 4 L a plaintiff meets that burden of production to show that the plaintiff's claims arise out of or relate to sufficient in-forum contacts of the defendant, then the burden shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." The weaker the plaintiff's evidence is on the first two prongs, the less the defendant needs to show under the third prong. *Munson*, 264 Or App at 699 (explaining that "[t]he analyses of minimum contacts and reasonableness are complimentary"). Whether the exercise of jurisdiction comports with fair play and substantial justice is a fact-specific inquiry which requires balancing the following seven factors:

> "'(1) the extent of the defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to plaintiffs interest in convenient and effective relief; and (7) the existence of an alternative forum.'"

*Munson*, 264 Or App at 700 (quoting *Harris Rutsky & Co. Ins. v. Bell & Clements Ltd.*, 328 F3d 1122, 1132 (9th Cir 2003)).

## IV. ANALYSIS

Plaintiffs put forth three bases for specific personal jurisdiction: Quest employed Oregonians, Quest conducted business in Oregon, including driving on Oregon's roads and servicing freight terminals in Oregon, and Quest directed M to dismiss an Oregon SPO to remain employed. We agree with the trial court that neither the fact that Quest employed Oregonians nor the fact that Quest conducted business in Oregon are sufficient bases to establish specific personal jurisdiction in this case. However, we disagree with the trial

court as to the legal implications of Quest's ultimatum to M to dismiss her SPO or else face termination of employment. Instead, we conclude that Oregon courts have specific personal jurisdiction over Quest in this case.

To start, Quest does not dispute that this lawsuit arises out of its ultimatum to M to dismiss the SPO. Thus, our analysis focuses on the other two parts of the test: whether there were minimum contacts with Oregon and whether an exercise of jurisdiction would comport with fair play and substantial justice.

Arguing for minimum contacts, plaintiffs allege that, by instructing M to dismiss the SPO, Quest "meddl[ed] in an Oregon judicial proceeding * * * to avail itself of the benefits of the Oregon judicial system" for its own business purposes. Quest responds that there was no contact between Quest and Oregon, because in asking M to dismiss the SPO, Quest did not "contact[] an Oregon court, initiate[] an Oregon judicial proceeding, file[] pleadings in an Oregon judicial proceeding or otherwise involve[] itself as a party in an Oregon judicial proceeding."

Quest's argument relies heavily on *Walden*, 571 US 277. In that case, the plaintiffs, who were Nevada residents, had $97,000 in cash seized from them while they were transiting the airport in Atlanta, Georgia. *Id.* at 280. The defendant, the federal Drug Enforcement Administration (DEA) agent who seized the cash, then drafted an affidavit to show probable cause for forfeiture. *Id.* The plaintiffs brought suit against the defendant in federal district court in Nevada, arguing that the affidavit misrepresented their encounter with the defendant and omitted exculpatory information, thus violating their Fourth Amendment rights. *Id.* at 281. The court granted the defendant's motion to dismiss for lack of specific personal jurisdiction. *Id.* A divided panel of the United States Court of Appeals for the Ninth Circuit reversed, concluding that the defendant had "'expressly aimed' his submission of the allegedly false affidavit at Nevada by submitting the affidavit with knowledge that it would affect persons with a 'significant connection' to Nevada." *Id.* at 282. The United States Supreme Court reversed, concluding that the defendant's actions did not

create sufficient minimum contacts with Nevada because "none of [the defendant's] challenged conduct had anything to do with Nevada itself." *Id.* at 289.

In *Walden*, the defendant did not "expressly aim" his conduct at Nevada and no connection to Nevada existed beyond the fact that the plaintiffs lived in Nevada and brought suit there. *Id.* In contrast, Quest's instruction to M was "expressly aimed" at Oregon, because it directed an employee to use the Oregon courts to take away an Oregon state law protection granted to that employee by those same courts. By issuing that direction, Quest sought to use the Oregon court system for its own benefit; namely, ease of scheduling employee trucking routes. That is sufficient to establish minimum contacts with Oregon for purposes of specific personal jurisdiction.

We are unpersuaded by Quest's argument that there was insufficient contact because the company *itself* did not file an action in the Oregon courts. While those kinds of actions would make the determination of specific personal jurisdiction a more straightforward matter, they are not required. *See Rivera v. Atlass Ins. Grp. of Florida, Inc.*, 678 F Supp 2d 23, 31-32 (DPR 2010) (explaining that "'the jurisprudence of minimum contacts casts a wide net, and a nonresident defendant may not always be able to elude the net by such simple expedients as remaining physically outside the forum or limiting contact with the forum to a single commercial transaction'" (quoting *Pritzker v. Yari*, 42 F3d 53, 62 (1st Cir 1994))). Specific personal jurisdiction is a highly fact-specific inquiry. *Burger King Corp.*, 471 US at 478-79 ("The Court long ago rejected the notion that personal jurisdiction might turn on 'mechanical' tests or on 'conceptualistic *** theories of the place of contracting or of performance[.]' Instead, we have emphasized the need for a 'highly realistic' approach[.]" (Internal citations omitted.)). As such, it can be established in a wide variety of circumstances. *See, e.g.*, *O'Neil*, 258 Or App at 832 (finding specific personal jurisdiction when an Oklahoma guard opened a prisoner's legal mail that was sent from Oregon, even though the guard never physically entered the state); *Power Investments, LLC v. SL EC, LLC*, 927 F3d 914, 919 (6th Cir

2019) (finding specific personal jurisdiction over a Missouri corporation and its principal for fraudulent misrepresentation and unjust enrichment in obtaining financing for a Kentucky property, despite the defendants never entering Kentucky, explaining that "[t]he reality that modern business often occurs electronically and by phone will not defeat personal jurisdiction"); *Pakootas v. Teck Cominco Metals, Ltd.,* 905 F3d 565, 577-78 (9th Cir 2018) (finding specific personal jurisdiction over a Canadian company for dumping several million tons of industrial waste into the Columbia river because the Canadian company "expressly aimed its waste at the State of Washington"); *Williams v. Preeminent Protective Servs., Inc.,* 81 F Supp 3d 265, 271 (EDNY 2015) (finding specific personal jurisdiction over a Maryland corporation with its principal place of business in Washington, D.C., where it hired the plaintiff knowing that she would work from home in New York, on the grounds that the Maryland corporation "transacted business in New York"); *Fischbarg v. Doucet*, 9 NY3d 375, 377, 880 NE2d 22, 24 (2007) (finding specific personal jurisdiction over California residents who retained a New York attorney to represent them in an Oregon federal court because the "defendants' retention and subsequent communications with plaintiff in New York established a continuing attorney-client relationship in this state and thereby constitute the transaction of business"). The dispositive question is always whether the defendant's intentional actions demonstrated a meaningful connection with the forum state. As we stated above, Quest's actions of directing an employee to take specific action in the Oregon court system is enough to establish that kind of meaningful connection that supports a finding of specific personal jurisdiction.

We are similarly unpersuaded by Quest's argument that any connection with Oregon was a "mere fortuity" and occurred only because M lived here. That argument does not address the dispositive fact, which is Quest's direction to M to use the Oregon court system to confer a benefit on the company. As Quest concedes, this lawsuit does not arise out of M's decision to live in Oregon or M's request to be routed through Oregon. The lawsuit arises out of Quest's ultimatum to M to dismiss the SPO if she wanted to keep her job,

and its subsequent decision to fire her when she did not dismiss the SPO. When it did so, Quest purposefully inserted itself into Oregon.

Having found that Quest's direction to M to use the Oregon courts to dismiss her SPO establishes minimum contacts with Oregon, we turn to the question of whether it was reasonably foreseeable that Quest would be "haled into court" in Oregon. We conclude it was. Having issued an ultimatum to an Oregon resident employee to use the Oregon courts to remove an Oregon state law protection, or else lose her employment with Quest, it is reasonably foreseeable that Quest would face legal action in the Oregon courts.

In sum, Quest's instruction to M to dismiss the SPO established minimum contacts with Oregon. And it is reasonably foreseeable that Quest could face litigation in Oregon based on its ultimatum to M to use the Oregon court system and its adverse employment decision when she did not do so. Quest does not dispute that the instruction is the "but for" cause of this litigation. Quest's instruction to M thus satisfies the first two prongs of the personal jurisdiction test.

Turning to the final part of the test, we conclude that Quest has not carried its burden to demonstrate that an exercise of jurisdiction would not comport with fair play and substantial justice. Quest takes the position that because there were no minimum contacts between Quest and Oregon, plaintiff's case on the first two prongs is weak, and therefore Quest does not need to make an "especially strong showing of reasonableness." Quest then presents us with a minimal argument which does not fully engage with the facts or the law as to why it would be unreasonable for Oregon to exercise specific personal jurisdiction. But as explained above, we have determined that plaintiffs met the first two prongs of the personal jurisdiction test. That means Quest carries a substantial burden to make "a compelling case that the exercise of jurisdiction would not be reasonable." *Swank*, 274 Or App at 65. Upon review, Quest's argument does not satisfy that burden. Specifically, the argument fails to demonstrate that it would not comport with fair play and substantial justice for Quest to defend

against a lawsuit in Oregon arising out of its intentional actions of directing an employee to use the Oregon court system to dismiss her SPO or else face employment termination, and thereafter terminating her employment when she did not do so.

## V.   CONCLUSION

In conclusion, Quest's ultimatum to M to dismiss the SPO or lose her job was a minimum contact with Oregon. The litigation arose out of Quest's conduct and was reasonably foreseeable. And Quest failed to meet its burden to prove that exercising jurisdiction would not comport with fair play and substantial justice.

Reversed and remanded.