# JOHN S. ADAMS, COADMINISTRATOR (ESTATE OF RYAN MICHAEL ADAMS), ET AL. *v.* AIRCRAFT SPRUCE & SPECIALTY CO. ET AL.
## (SC 20505)

Robinson, C. J., and McDonald, D'Auria, Mullins, Kahn, Ecker and Keller, Js.

*Syllabus*

The plaintiffs, as coadministrators of the estate of their son, R, sought to recover damages from the named defendant, A Co., among other parties, in connection with a fatal airplane crash in New York. A Co., a California corporation with its principal place of business in California, is a dealer and distributor of aircraft parts, including overhauled replacement parts for airplane engines. A Co. does not have any offices, plants, facilities, agents, employees, property, or direct business operations of any kind in Connecticut, and it does not directly advertise its products in Connecticut but, rather, advertises in a broad campaign directed at the North American market. Since 2008, A Co. has sold its products to Connecticut consumers, and approximately 0.5 percent of its total revenue from 2012 through 2017 was derived from Connecticut sales, averaging approximately $593,000 per year. Out of the 6050 carburetors it sold between 2008 and 2017, 25 were shipped to Connecticut. In 2012, A Co. sold an overhauled replacement carburetor that it had purchased from K Co., an Alabama corporation, to E Co., a New York company, which installed the carburetor in one of its airplanes. Thereafter, that plane was involved

---

been settled that [the double jeopardy clause] imposes no limitations whatever upon the power to retry a defendant who has succeeded in getting his first conviction set aside. The principle that this provision does not preclude the [g]overnment's retrying a defendant whose conviction is set aside because of an error in the proceedings leading to conviction is a [well established] part of our constitutional jurisprudence." (Citation omitted; emphasis omitted; footnote omitted; internal quotation marks omitted.)), overruled in part on other grounds by *Alabama* v. *Smith*, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989).

Adams *v.* Aircraft Spruce & Specialty Co.

in the crash that killed R. The plaintiffs, who, along with R, were Connecticut residents, asserted a product liability claim against A Co. Specifically, the plaintiffs alleged that the overhauled carburetor malfunctioned after takeoff due to a design defect and that this malfunction was a contributing factor in R's death. The trial court granted A Co.'s motion to dismiss for lack of personal jurisdiction, concluding, inter alia, that the exercise of personal jurisdiction over A Co. would violate constitutional principles of due process in light of recent United States Supreme Court precedent requiring a showing that the defendant engaged in some activity that connects it to the forum state and that the action arises out of or relates to those contacts. Because A Co.'s only contacts with Connecticut were its limited sales, the trial court concluded that the "arise out of or relate to" element of specific personal jurisdiction had not been met. From the judgment of dismissal rendered in favor of A Co., the plaintiffs appealed, claiming that the trial court improperly had required, as a matter of due process, a causal connection between A Co.'s forum conduct and the plaintiffs' injuries to support specific personal jurisdiction. *Held* that the trial court correctly concluded that the exercise of personal jurisdiction over A Co. in the present case would violate constitutional principles of due process:

1. A Co. purposely availed itself of the privilege of conducting business in Connecticut:

From 2012 to 2017, A Co. earned approximately $593,000 per year from its sale of aviation products, including carburetors, in the Connecticut market, activity of such a degree was sufficient to evince an intent or purpose to serve that market, and the fact that the volume of A Co.'s sales in Connecticut translated to a low percentage of its total sales did not render its contacts with the state random or fortuitous.

Moreover, it would have been foreseeable to A Co. that it could be haled into a Connecticut court to litigate a product liability action, if, for example, one of the products it sold in Connecticut was unreasonably dangerous and caused injury in the state as a consequence of the alleged defect.

2. The plaintiffs nevertheless failed to establish that their claim against A Co. arose out of or related to A Co.'s contacts with Connecticut insofar as their specific product liability claim was not sufficiently connected to A Co.'s forum contacts to establish the case linkage necessary to support a finding of specific personal jurisdiction:

This court reviewed recent United States Supreme Court precedent concerning the "arises out of or relates to" element of specific personal jurisdiction, including *Ford Motor Co.* v. *Montana Eighth Judicial District Court* (141 S. Ct. 1017), and *Bristol-Myers Squibb Co.* v. *Superior Court* (137 S. Ct. 1773), those cases made it clear that, whereas the purposeful availment element of specific personal jurisdiction focuses

Adams *v.* Aircraft Spruce & Specialty Co.

exclusively on whether a defendant has a sufficiently meaningful affilia-
tion with a forum, the relatedness or case-linkage analysis focuses on
whether a plaintiff's specific claim is sufficiently connected to the defen-
dant's forum contacts, and the case-linkage element therefore involves
consideration of only those forum contacts of a defendant that have a
connection to the specific claim or claims asserted by the plaintiff.

In the context of product liability claims, most courts considering case
linkage have required forum contacts pertaining to the specific product
model at issue in the litigation, but some courts take a broader view in
cases in which the defendant is the product manufacturer, pursuant to
which a defendant's forum activity relating to other models of the same
product type could provide support for specific personal jurisdiction if
there is no basis to conclude that there is a material difference between
the models.

In the present case, although the plaintiffs broadly alleged that A Co.
marketed and sold replacement aircraft engine parts, including carbure-
tors, to Connecticut customers and that the overhauled replacement
carburetor installed in the plane that crashed was defectively designed,
K Co., and not A Co., was the product manufacturer, and there was no
allegation or evidence that A Co. exclusively distributed K Co. products
or that particular model of carburetor, or that A Co. distributed, sold,
marketed, or otherwise placed into the stream of commerce any similarly
defective products in Connecticut.

Moreover, even if there was an allegation or evidence that A Co. had
sold the same or a similarly defective product in Connecticut, that would
not have been sufficient to support specific personal jurisdiction under
the facts of the present case because no activity or occurrence relating
to the plaintiffs' product liability claim against A Co. took place in Con-
necticut, as the carburetor at issue was not overhauled or sold in Connect-
icut, or installed or used in Connecticut, there was no claim that that
any other product with the same alleged defect was ever marketed or
sold in Connecticut, the alleged malfunction did not occur in Connecticut,
and, although R's residency in Connecticut could bolster other factors
that supported a finding of specific personal jurisdiction, in view of the
present record, it was not a sufficient basis, in and of itself, to provide
the necessary case linkage.

The plaintiffs' reliance on the standard set forth by this court in *Thom-
ason* v. *Chemical Bank* (234 Conn. 281) was misplaced because, although
that standard, which rested on the foreseeability of a similar cause of
action, is consonant with the core due process concern of fairness, it
is nonetheless inconsistent with United States Supreme Court specific
personal jurisdiction precedent, as presently articulated, and this court

Adams *v.* Aircraft Spruce & Specialty Co.

did not have the authority to adopt a more capacious standard for specific jurisdiction than that required by the United States Supreme Court.

Argued March 25—officially released November 22, 2022

*Procedural History*

Action to recover damages for, inter alia, wrongful death of the plaintiffs' decedent resulting from an allegedly defective product, and for other relief, brought to the Superior Court in the judicial district of Danbury and transferred to the judicial district of Stamford-Norwalk, Complex Litigation Docket, where the court, *Lee, J.*, granted the named defendant's motion to dismiss and rendered judgment thereon, from which the plaintiffs appealed. *Affirmed.*

*David S. Golub*, for the appellants (plaintiffs).

*Gene K. Kaskiw*, pro hac vice, with whom were *Timothy M. Gondek* and, on the brief, *Douglas H. Amster*, pro hac vice, for the appellee (named defendant).

*Opinion*

KELLER, J. This appeal requires us to revisit the requirements for a forum to exercise specific personal jurisdiction over a foreign corporation in the wake of the United States Supreme Court's recent decisions considering this issue in the context of product liability actions. More particularly, we consider whether the corporation's contacts with the forum can sufficiently "relate to" such a cause of action, such that the forum's exercise of specific personal jurisdiction would be consonant with due process, in the absence of any activity or occurrence in the forum concerning either the *specific* product or product model that allegedly malfunctioned. The plaintiffs, John S. Adams and Mary Lou Hanney, coadministrators of the estate of Ryan Michael Adams, appeal from the trial court's judgment in favor of the named defendant, Aircraft Spruce & Specialty

Adams *v.* Aircraft Spruce & Specialty Co.

Co.,[1] rendered after the granting of the defendant's motion to dismiss the product liability claim brought against it. The plaintiffs contend that the trial court improperly failed to recognize that, as long as the plaintiffs' cause of action is not materially different from an action that might have directly resulted from a person's use of the defendant's product in Connecticut, exercising personal jurisdiction over the defendant would satisfy both Connecticut's applicable long arm statute and due process. We disagree and, accordingly, affirm the judgment of the trial court.

The present case arises from a fatal airplane crash. The following relevant facts were alleged in the complaint or were contained in the affidavits and exhibits submitted in support of, or in opposition to, the defendant's motion to dismiss.[2] The defendant, a California corporation, is a dealer and distributor of aircraft parts— including overhauled replacement parts for airplane engines, pilot supplies, and other aviation related equipment. It has its principal place of business in California, as well as major business operations in Georgia and Ontario, Canada.

The defendant does not have any offices, plants, facilities, agencies, agents, employees, property, or direct business operations of any kind in Connecticut. It does not "directly" advertise its products in Connecticut; rather, it advertises in a broad campaign directed at the North American market.[3]

---

[1] Because Aircraft Spruce & Specialty Co. is the sole defendant participating in this appeal, we hereinafter refer in this opinion to it as the defendant and to the other defendants by name.

[2] "[A] motion to dismiss [for lack of personal jurisdiction] . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone. . . . Where, however, as here, the motion is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue[s] . . . ." (Internal quotation marks omitted.) *Cogswell* v. *American Transit Ins. Co.*, 282 Conn. 505, 516, 923 A.2d 638 (2007).

[3] The plaintiffs' complaint alleges that the defendant marketed its products to customers in Connecticut. What the defendant's marketing entails and

Adams *v.* Aircraft Spruce & Specialty Co.

Notwithstanding the lack of direct marketing in this state, since 2008, the defendant has sold aviation related products to Connecticut consumers. Approximately 0.5 percent of the defendant's total revenue from 2012 through 2017 was derived from Connecticut sales, averaging approximately $593,000 per year. Of particular relevance to the present case, out of the 6050 carburetors sold by the defendant during the ten year period between 2008 and 2017, 25 were shipped to Connecticut. The defendant expects that some of the aircraft engine parts it currently offers for sale, including carburetors and carburetor parts, will be sold to Connecticut consumers.

On May 29, 2012, the defendant sold an overhauled replacement carburetor that it had purchased from Kelly Aerospace Power Systems, Inc. (Kelly Aerospace), an Alabama corporation, to Richard O. Bargabos, the

what forms it takes is not clear from the record. It appears that what the trial court meant by its finding that the defendant did not "directly" market its products in Connecticut is that the defendant did not specifically target Connecticut consumers through any Connecticut specific medium. Compare *Shoppers Food Warehouse* v. *Moreno*, 746 A.2d 320, 335–36 (D.C.) (defendant advertised directly to residents of District of Columbia in District's "major circulation newspaper"), cert. denied, 530 U.S. 1270, 120 S. Ct. 2737, 147 L. Ed. 2d 997 (2000), with *Ralls Corp.* v. *Terna Energy USA Holding Corp.*, 920 F. Supp. 2d 27, 32 (D.D.C. 2013) (contrasting advertisement in nationally circulated newspaper with advertisement in local paper purposefully soliciting District's residents or businesses), and *Cox* v. *HP Inc.*, 317 Or. App. 27, 38, 504 P.3d 52 (contrasting defendant's "general advertising for a 'global' audience" with effort specifically targeted at forum), review denied, 369 Or. 705, 509 P.3d 114 (2022).

According to the defendant's responses to interrogatories and requests for production, it maintains a website on which it promotes its products and has mailed approximately 2400 catalogues over a 10 year period to Connecticut addresses, but only upon customer request. The defendant also participated as an exhibitor at a promotional "fly-in" event at the Groton-New London Airport in Connecticut (called "fly-in" because pilots would fly in from various states to attend), two years after the accident at issue. See *Harlow* v. *Children's Hospital*, 432 F.3d 50, 61 (1st Cir. 2005) ("in analyzing specific jurisdiction, contacts must generally be limited to those before and surrounding the accrual of the cause of action").

Adams *v.* Aircraft Spruce & Specialty Co.

owner and operator of Bargabos Earthworks, Inc., doing business as Eagle View Flight (Eagle View), in Hamilton, New York. There, Bargabos installed it in a Cessna 150H airplane owned by Eagle View.

On September 20, 2015, the plaintiffs' eighteen year old son, Ryan Michael Adams (decedent), was a passenger in Eagle View's Cessna 150H airplane, which was being piloted by his college classmate, Cathryn Depuy. The decedent and Cathryn Depuy were both residents of Ridgefield, Connecticut, but were then attending Colgate University in Hamilton, New York. Approximately thirty minutes after taking off, the airplane crashed in Morrisville, New York, killing both the decedent and Cathryn Depuy.[4]

The plaintiffs, residents of Connecticut and coadministrators of the decedent's estate being probated in Connecticut, commenced the present action against the defendant and seven other entities or individuals in the Superior Court in the judicial district of Danbury, asserting theories of strict product liability and negligence.[5] The sole count of the complaint directed against the defendant alleged that the overhauled carburetor

_____

[4] The Hamilton Municipal Airport, where Eagle View housed the plane, is approximately 160 miles from the Connecticut border. According to the National Transportation Safety Board's "Aviation Accident Final Report," the flight was designated a "local flight" for the purpose of "pleasure," and no flight plan had been filed.

[5] In addition to the defendant, the plaintiffs asserted claims against Kelly Aerospace Power Systems, Inc., and its successor in liability, Kelly Aerospace Energy Systems, LLC (collectively, Kelly Aerospace); Bargabos; Eagle View; James W. Depuy and Cathleen Wright, as coadministrators of the estate of Cathryn Depuy; and James W. Depuy, individually. We note that James W. Depuy and Cathleen Wright, also residents of Connecticut, filed a product liability action against the defendant relating to the same incident underlying the present action, which is pending in a California state court. Kelly Aerospace filed a motion to dismiss the claim against it in the present action for lack of personal jurisdiction, as did Bargabos and Eagle View. For reasons that are not clear from the record, the trial court did not rule on those motions.

Adams *v.* Aircraft Spruce & Specialty Co.

it had sold, and which was installed in the plane, malfunctioned after takeoff due to a design defect and that this malfunction was a contributing factor in the decedent's death.[6] The defendant moved to dismiss the cause of action against it for lack of personal jurisdiction. Specifically, as relevant to the issue on appeal, the defendant contended that Connecticut's exercise of personal jurisdiction over it would violate its right to due process because its contacts with the state are "virtually nonexistent" and all of the pertinent events leading to this litigation took place in New York. The plaintiffs conceded that the defendant's contacts with Connecticut were insufficient to support *general* personal jurisdiction under the due process clause but contended that those contacts were sufficiently "related to" the litigation to satisfy Connecticut's long arm statute and specific personal jurisdiction under the due process clause.

After oral argument and supplemental briefing, the trial court issued its decision granting the defendant's motion to dismiss the cause of action against it. The court agreed with the plaintiffs that personal jurisdiction was authorized under Connecticut's applicable long arm statute, General Statutes § 33-929 (f),[7] which

---

[6] The factual allegations forming the crux of the plaintiffs' complaint were that (1) the defective and unreasonably dangerous carburetor malfunctioned, causing a loss of power, and (2) certain of the defendants knew or should have known that Cathryn Depuy lacked sufficient aviation experience to safely operate the plane without supervision under such conditions. At oral argument before this court, the plaintiffs indicated that they were pursuing theories of both design defect and manufacturing defect.

[7] General Statutes § 33-929 (f) provides in relevant part: "Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising . . . (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers . . . ."

Adams *v.* Aircraft Spruce & Specialty Co.

subjects foreign corporations to suit by a resident of
the state on a cause of action "arising . . . out of" the
corporation's distribution of goods with the reasonable
expectation that such goods are to be used, and are so
used, in this state. The trial court reasoned that, under
this court's interpretation of "arising . . . out of" in
*Thomason* v. *Chemical Bank*, 234 Conn. 281, 661 A.2d
595 (1995), no causal connection to the defendant's
conduct in Connecticut was required; it was sufficient
that the plaintiffs' cause of action was not materially
different from an action that a similarly situated plaintiff
*could have brought* in a Connecticut court. See id., 296
(interpreting subsection of then applicable long arm
statute regarding conduct "aris[ing] . . . out of . . .
business solicited in this state" (internal quotation marks
omitted)).[8] The trial court agreed with the defendant,
however, that such circumstances were not sufficient
to satisfy the requirements of due process. The court
noted that, under recent United States Supreme Court
precedent—*Bristol-Myers Squibb Co.* v. *Superior
Court*, U.S. , 137 S. Ct. 1773, 198 L. Ed. 2d 395
(2017) (*Bristol-Myers*), and *Walden* v. *Fiore*, 571 U.S.
277, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014)—"in order
for a court to assert specific personal jurisdiction over
an out-of-state party consistent with the requirements
of due process, the defendant must have engaged in
some activity that connects it to the forum state, and
the lawsuit must arise out of or relate to those contacts."
The trial court concluded that the "arise out of or relate
to" requirement was not met in the present case, reason-
ing that "[t]he relevant focus is on the actions commit-
ted by the defendant, not the fact that the plaintiffs,
who allegedly suffered harm that occurred out of state,
happen to be in this state. . . . [The defendant's] only
contacts with Connecticut are its limited sales compris-

---

[8] We elaborate on this court's decision in *Thomason* in part II B of this
opinion.

Adams *v.* Aircraft Spruce & Specialty Co.

ing less than 1 percent of its total revenue. The parties agree that the items sold in Connecticut did not contribute to the plane crash. The allegedly defective carburetor at issue in this case was not sold in Connecticut, and the death of the plaintiffs' decedent occurred in New York.''

The plaintiffs appealed from the trial court's judgment to the Appellate Court. While their appeal was pending, consolidated appeals of two state court cases bearing on the legal issue in the present appeal were awaiting decision from the United States Supreme Court. See *Ford Motor Co.* v. *Montana Eighth Judicial District Court*, U.S. , 141 S. Ct. 1017, 209 L. Ed. 2d 225 (2021). In response to motions by the plaintiffs, this court transferred the appeal to itself; see General Statutes § 51-199 (c) and Practice Book § 65-2; and stayed briefing and oral argument until after the United States Supreme Court issued its decision in the consolidated appeals in those cases.

In the present appeal, the plaintiffs claim that the trial court's judgment is inconsistent with the view of the "minimum contacts" necessary to satisfy due process, as articulated by the United States Supreme Court in *Ford Motor Co.* and by this court in its decision in *Thomason* interpreting our long arm statute to comport with due process. They contend that, in contravention of the holdings in these cases, the trial court in the present case held that due process requires a causal connection between a defendant's forum conduct and a plaintiff's injury to support specific jurisdiction. The plaintiffs further contend that affirming the trial court's judgment would cast doubt on the constitutional validity of the corporate long arm statute interpreted in *Thomason*, as well as the noncorporate long arm statute, General Statutes § 52-59b, with regard to out-of-state conduct causing injury to Connecticut residents. We conclude that United States Supreme Court prece-

Adams *v.* Aircraft Spruce & Specialty Co.

dent compels the conclusion that Connecticut lacks personal jurisdiction over the defendant under the circumstances of this case.

I

"When a defendant challenges personal jurisdiction in a motion to dismiss, the court must undertake a two part inquiry to determine the propriety of its exercising such jurisdiction over the defendant. The trial court must first decide whether the applicable state [long arm] statute authorizes the assertion of jurisdiction over the [defendant]. If the statutory requirements [are] met, its second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process." (Internal quotation marks omitted.) *North Sails Group, LLC* v. *Boards & More GmbH*, 340 Conn. 266, 273, 264 A.3d 1 (2021).

The defendant does not challenge the trial court's determination that Connecticut's long arm statute authorizes the assertion of jurisdiction over it. Our review in the present case is therefore limited to the trial court's determination that the exercise of personal jurisdiction over the defendant would violate due process. Plenary review applies. Id., 269.

The United States Supreme Court's personal jurisdiction cases are our guidepost. As this jurisprudence has continued to evolve; see H. Erichson et al., "Case-Linked Jurisdiction and Busybody States," 105 Minn. L. Rev. Headnotes 54, 55 (2020); M. Vitiello, "The Supreme Court's Latest Attempt at 'Clarifying' Personal Jurisdiction: More Questions than Answers," 57 Tulsa L. Rev. 395, 397, 399–417 (2022); we begin with that court's recent summary of the governing general principles. "The [f]ourteenth [a]mendment's [d]ue [p]rocess [c]lause limits a state court's power to exercise jurisdiction over a defendant. The canonical decision in this area remains

Adams *v.* Aircraft Spruce & Specialty Co.

*International Shoe Co.* v. *Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945). There, the [United States Supreme] Court held that a tribunal's authority depends on the defendant's having such 'contacts' with the forum [s]tate such that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.' . . . In giving content to that formulation, the [c]ourt has long focused on the nature and extent of 'the defendant's relationship to the forum [s]tate.' . . . That focus led to [the] recogni[-tion] [of] two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction. . . .

"A state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the [s]tate. . . . General jurisdiction, as its name implies, extends to 'any and all claims' brought against a defendant. . . . Those claims need not relate to the forum [s]tate or the defendant's activity there; they may concern events and conduct anywhere in the world. But that breadth imposes a correlative limit: Only a select 'set of affiliations with a forum' will expose a defendant to such sweeping jurisdiction. . . . In what [is] called the 'paradigm' case, an individual is subject to general jurisdiction in her place of domicile. . . . And the 'equivalent' forums for a corporation are its place of incorporation and principal place of business. . . .

"Specific jurisdiction is different: It covers defendants less intimately connected with a [s]tate, but only as to a narrower class of claims. The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.' . . . The defendant . . . must take 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum [s]tate. . . . The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.' . . .

Adams *v.* Aircraft Spruce & Specialty Co.

They must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum [s]tate or entering a contractual relationship centered there. . . . *Yet even then— because the defendant is not 'at home'—the forum [s]tate may exercise jurisdiction in only certain cases. The plaintiff's claims, we have often stated, 'must arise out of or relate to the defendant's contacts' with the forum. . . . Or put just a bit differently, 'there must be' an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum [s]tate and is therefore subject to the [s]tate's regulation.'* " . . .

"These rules derive from and reflect two sets of values—treating defendants fairly and protecting 'interstate federalism.' . . . [The United States Supreme Court's] decision in *International Shoe* [*Co.*] founded specific jurisdiction on an idea of reciprocity between a defendant and a [s]tate: When (but only when) a company 'exercises the privilege of conducting activities within a state'—thus 'enjoy[ing] the benefits and protection of [its] laws'—the [s]tate may hold the company to account for related misconduct. . . . Later decisions have added that [the] doctrine similarly provides defendants with 'fair warning'—knowledge that 'a particular activity may subject [it] to the jurisdiction of a foreign sovereign.' . . . And [the] [c]ourt has considered alongside defendants' interests those of the [s]tates in relation to each other. One [s]tate's 'sovereign power to try' a suit, [it] ha[s] recognized, may prevent 'sister [s]tates' from exercising their like authority. . . . *The law of specific jurisdiction thus seeks to ensure that [s]tates with 'little legitimate interest' in a suit do not encroach on [s]tates more affected by the controversy.*" (Citations omitted; emphasis added.) *Ford Motor Co.* v. *Montana Eighth Judicial District Court,* supra, 141 S. Ct. 1024–25.

Adams *v.* Aircraft Spruce & Specialty Co.

In the context of specific jurisdiction then, the due process test can be said to have the following elements: (1) the defendant purposefully availed itself of the privilege of conducting activities within the forum, (2) the plaintiff's claim arises out of or relates to the defendant's forum related contacts, and (3) if the first two elements favor the plaintiff's choice of forum, the exercise of jurisdiction is ultimately fair and reasonable under the circumstances.[9] See 4A C. Wright et al., Federal Practice and Procedure (4th Ed. 2022) § 1069. If the plaintiff cannot prove either of the first two elements, or the defendant prevails on the third element, the forum cannot exercise jurisdiction over the defendant. See, e.g., *Vapotherm, Inc.* v. *Santiago*, 38 F.4th 252, 263 (1st Cir. 2022); *North Sails Group, LLC* v. *Boards & More GmbH*, supra, 340 Conn. 275 n.9.

II

This appeal focuses on the first and second elements. The plaintiffs have referred to these elements collectively under the label of "minimum contacts," as do many cases. See, e.g., *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 474–76, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985); *Apple Inc.* v. *Zipit Wireless, Inc.*, 30 F.4th 1368, 1375 (Fed. Cir. 2022); *Schwab Short-Term Bond Market Fund* v. *Lloyds Banking Group PLC*, 22 F.4th 103, 121–22 (2d Cir. 2021), cert. denied, U.S. , 142 S. Ct. 2852, L. Ed. 2d (2022). As the discussion

---

[9] See *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 476–77, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) ("Once it has been decided that a defendant purposefully established minimum contacts within the forum [s]tate, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." These factors include "the burden on the defendant," "the forum [s]tate's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and "the shared interest of the several [s]tates in furthering fundamental substantive social policies." (Internal quotation marks omitted.)).

Adams *v.* Aircraft Spruce & Specialty Co.

that follows indicates, recent United States Supreme Court cases exclusively focusing on the "arises out of or relates to" element demonstrate that the minimum contacts label does not accurately reflect important features that distinguish these two elements. See H. Erichson et al., supra, 105 Minn. L. Rev. Headnotes 73–74 (explaining why minimum contacts and case linkage properly are analyzed as distinct elements). Indeed, "minimum contacts" appears nowhere in the analysis in the majority opinions in these cases. We therefore refer to the elements as (1) purposeful availment, (2) case linkage,[10] and (3) fairness.

A

We begin with purposeful availment. "[T]he purposeful availment inquiry represents a rough quid pro quo: when a defendant deliberately targets its behavior toward the society or economy of a particular forum, the forum should have the power to subject the defendant to judgment regarding that behavior. . . . The cornerstones of this inquiry are voluntariness and foreseeability." (Internal quotation marks omitted.) *North Sails Group, LLC* v. *Boards & More GmbH*, supra, 340 Conn. 278. "Foreseeability means that the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there. . . . The requirement of purposeful availment, therefore, ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts . . . ." (Citations omitted; internal quotation marks omitted.) *Samelko* v. *Kingstone Ins. Co.*, 329 Conn. 249, 265–66, 184 A.3d 741 (2018).

Although the defendant argues otherwise, we conclude that it has purposefully availed itself of the privi-

––––––––––

[10] We prefer the term "case linkage" to "relatedness," a term used by many other courts, because the former is more descriptive and less abstract.

Adams *v.* Aircraft Spruce & Specialty Co.

lege of conducting business in Connecticut in a sufficiently significant way. From 2012 to 2017, the defendant's sale of aviation products, including carburetors and carburetor parts, to the Connecticut market brought in average revenue of more than one-half million dollars per year. See *Chloé* v. *Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2d Cir. 2010) ("[i]n actually sending items to New York, there can be no doubt that [the defendant's] conduct was purposefully directed toward the forum [s]tate" (emphasis omitted; internal quotation marks omitted)). Simply because this volume of sales translates to a low percentage of the defendant's total sales (0.5 percent) hardly renders its contacts with the state "random" or "fortuitous." (Internal quotation marks omitted.) *Ford Motor Co.* v. *Montana Eighth Judicial District Court*, supra, 141 S. Ct. 1025; see *Bristol-Myers Squibb Co.* v. *Superior Court*, supra, 137 S. Ct. 1778 (noting that defendant's sales in California for allegedly defective product totaled $900 million over six year period, translating to approximately 1 percent of its nationwide sales revenue); *Bristol-Myers Squibb Co.* v. *Superior Court*, supra, 1787 (Sotomayor, J., dissenting) ("[the defendant] does not dispute that it has purposefully availed itself of California's markets"); *Duffy* v. *Kaman Aerospace Corp.*, 590 F. Supp. 3d 1317, 1326 (D. Mont. 2022) (defendant's sales in forum, which comprised less than 1 percent of its total net sales for three year period, were sufficient to show purposeful availment); *Avicolli* v. *BJ's Wholesale Club, Inc.*, Docket No. 21-1119, 2021 WL 3471167, *3 (E.D. Pa. August 6, 2021) (approvingly citing case in which defendants' direct sales of product to customers in forum constituted sufficient evidence of purposeful availment despite fact that those sales accounted for less than 1 percent of defendants' total annual sales). Activities of such a degree are sufficient to evince "an intent or purpose to serve the market in the forum [s]tate . . . ."

Adams *v.* Aircraft Spruce & Specialty Co.

*Asahi Metal Industry Co., Ltd.* v. *Superior Court*, 480 U.S. 102, 112, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987).

It certainly would have been foreseeable to the defendant that it could be haled into a Connecticut court to litigate a products liability action if, for example, one of the products it sold in Connecticut was unreasonably dangerous and caused injury in the state as a consequence of that alleged defect. See *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980) ("if the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its products in other [s]tates, it is not unreasonable to subject it to suit in one of those [s]tates if its allegedly defective merchandise has there been the source of injury to its owner or to others"); see also *Keeton* v. *Hustler Magazine, Inc.*, 465 U.S. 770, 781, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984) (when corporation "has continuously and deliberately exploited [a state's] market, it must reasonably anticipate being haled into [that state's] court[s]" to defend actions based on products causing injury there).

B

Having determined that the defendant has purposefully availed itself of the privilege of conducting business in this state, we turn to the second element of specific jurisdiction: whether the plaintiffs' cause of action against the defendant arises out of *or relates to* those forum contacts. As one commentator has observed, although "[t]he question of what sort of contacts suffice under the minimum contacts [inquiry] has been considered by the [United States Supreme] Court in a long and [now familiar] sequence of decisions . . . [t]he question of *what sort of case-link* is required . . . has received little elaboration." (Emphasis in original.) H.

Adams *v.* Aircraft Spruce & Specialty Co.

Erichson et al., supra, 105 Minn. L. Rev. Headnotes 59; see also C. Rhodes & C. Robertson, "A New State Registration Act: Legislating a Longer Arm for Personal Jurisdiction," 57 Harv. J. on Legis. 377, 386 (2020) (highlighting lack of guidance on necessary relationship between defendant, forum, and controversy). The need for explication of the case-linkage element of specific jurisdiction became more urgent following a pair of Supreme Court decisions in 2011 and 2014 that adopted a clearer but distinctly narrower test for establishing general jurisdiction: the defendant must be "at home" in the forum. *Daimler AG* v. *Bauman*, 571 U.S. 117, 137, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014); *Goodyear Dunlop Tires Operations*, *S.A.* v. *Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011). Prior to those decisions, it had been assumed that foreign corporations were subject to suit in any state in which they did continuous and systematic business. See *Daimler AG* v. *Bauman*, supra, 149, 153–54 (Sotomayor, J., concurring in the judgment).

The case-linkage aspect of specific jurisdiction was subsequently brought front and center in two cases in which suit was brought against a large, national corporation: *Bristol-Myers* and *Ford Motor Co.* These cases are significant because, for the first time, the United States Supreme Court made clear that purposeful availment and "arise out of or relate to" are distinct inquiries that serve distinct purposes. They also are particularly illuminating for our purposes in the present case because they focus on the case-linkage aspect in the context of product liability actions.[11]

In *Bristol-Myers*, a large group of individual plaintiffs—86 California residents and 592 residents from 33

_____

[11] We are mindful that neither *Bristol-Myers* nor *Ford Motor Co.* involved an allegedly defective component integrated into another entity's product, as does the present case. Neither party, however, has contended that this distinction is material.

Adams *v.* Aircraft Spruce & Specialty Co.

other states—filed an action in California state court against the pharmaceutical company Bristol-Myers Squibb (BMS), alleging that Plavix, a prescription drug that BMS manufactures and markets nationally, had damaged their health. *Bristol-Myers Squibb Co.* v. *Superior Court*, supra, 137 S. Ct. 1778. BMS, a Delaware corporation headquartered in New York; id., 1777; moved to dismiss the nonresidents' claims, which were premised on the same theories of liability as the California residents' claims, for lack of personal jurisdiction. Id., 1778. BMS did not create its marketing strategy for Plavix in California and did not manufacture or work on the regulatory approval of the product in California. Id. Nonetheless, BMS sold substantial amounts of Plavix in California; in a seven year period preceding the action, it earned more than $900 million in revenue from the sale of approximately 187 million Plavix pills in the state. Id. BMS also had other substantial contacts with California: research and laboratory facilities were located in the state, it employed 250 sales representatives there, and it maintained a small state government advocacy office in Sacramento. Id.

In light of these contacts and its uncontested obligation to defend against similar actions brought by California residents, BMS did not contest that it had purposefully availed itself of California's markets and conceded that it would not suffer any inconvenience if it had to defend against the nonresidents' claims. See id., 1787 (Sotomayor, J., dissenting). The appeal therefore turned on whether the nonresidents' claims arose out of or related to BMS' contacts with the forum. Id., 1780.

The United States Supreme Court's discussion of the relevant legal principles in *Bristol-Myers* emphasized the role of interstate federalism in the due process analysis. The court explained that "[a]ssessing th[e] burden [on the defendant] . . . encompasses the more abstract matter of submitting to the coercive power of a [s]tate

Adams *v.* Aircraft Spruce & Specialty Co.

that may have little legitimate interest in the claims in question. . . . [R]estrictions on personal jurisdiction are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective [s]tates. . . . The [sovereign power] of each [s]tate [to try causes in their courts] . . . implie[s] a limitation on the sovereignty of all its sister [s]tates. . . . And at times, this federalism interest may be decisive. . . . [E]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another [s]tate; even if the forum [s]tate has a strong interest in applying its law to the controversy; even if the forum [s]tate is the most convenient location for litigation, the [d]ue [p]rocess [c]lause, acting as an instrument of interstate federalism, may sometimes act to divest the [s]tate of its power to render a valid judgment." (Citations omitted; internal quotation marks omitted.) Id., 1780–81

The court then examined through this lens whether there was an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum [s]tate." (Internal quotation marks omitted.) Id., 1781. The court concluded that this affiliation was lacking with respect to the nonresidents because they "were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California. The mere fact that other plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the [s]tate to assert specific jurisdiction over the nonresidents' claims. . . . [A] defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction. . . . This remains true even when third parties (here, the plaintiffs who reside in California)

Adams *v.* Aircraft Spruce & Specialty Co.

can bring claims similar to those brought by the nonresidents. . . . What is needed—and what is missing here—is a connection between the forum and the specific claims at issue.'' (Citation omitted; emphasis omitted; internal quotation marks omitted.) Id.

The lone dissenter, Justice Sotomayor, argued that the claims of the nonresidents '' 'relate to' '' the advertising and distribution efforts for Plavix that BMS undertook in California, regardless of whether the nonresidents sustained their injuries in California, as did the residents: "All of the plaintiffs—residents and nonresidents alike—allege that they were injured by the same essential acts. Our cases require no connection more direct than that.'' Id., 1786 (Sotomayor, J., dissenting). Justice Sotomayor complained that the majority's approach allowed federalism concerns to trump concerns about fairness to the parties. Id., 1788 (Sotomayor, J., dissenting). She argued that jurisdiction should be measured "first and foremost by the yardstick set out in *International Shoe* [*Co.*]—fair play and substantial justice . . . . The majority's opinion casts that settled principle aside.'' (Citation omitted; internal quotation marks omitted.) Id.

*Ford Motor Co.* subsequently presented the United States Supreme Court with cases in which the case-linkage aspect deemed missing in *Bristol-Myers* was established through facts connecting the forum state to the particular claim asserted by the plaintiffs. The introductory paragraph of the court's decision aptly sums up the crux of the cases: "In each of these two cases, a state court held that it had jurisdiction over Ford Motor Company [Ford] in a products-liability suit stemming from a car accident. The accident happened in the [s]tate where suit was brought [Montana or Minnesota]. The victim was one of the [s]tate's residents. And Ford did substantial business in the [s]tate—among other things, advertising, selling, and servicing the

Adams *v.* Aircraft Spruce & Specialty Co.

model of vehicle the suit claims is defective. Still, Ford contends that jurisdiction is improper because the particular car involved in the crash was not first sold in the forum [s]tate, nor was it designed or manufactured there. We reject that argument. When a company like Ford serves a market for a product in a [s]tate and that product causes injury in the [s]tate to one of its residents, the [s]tate's courts may entertain the resulting suit.'' *Ford Motor Co.* v. *Montana Eighth Judicial District Court*, supra, 141 S. Ct. 1022.

In one sense, the court's decision in *Ford Motor Co.* was simply an application of a principle that had been articulated by the court decades earlier: ''[T]his [c]ourt has stated that specific jurisdiction attaches in cases identical to the ones here—when a company like Ford serves a market for a product in the forum [s]tate and the product malfunctions there.''[12] Id., 1027; see also id. (acknowledging that, although this statement in *World-Wide Volkswagen Corp.* was ''technically 'dict[um],' '' it had been endorsed in numerous subsequent cases). The allegedly defective product in *World-Wide Volkswagen Corp.* similarly had not been designed, manufactured, or sold in the forum state. See id., 1028.

The court in *Ford Motor Co.* ostensibly broke new ground, however, when it rejected Ford's interpretation

---

[12] ''In *World-Wide Volkswagen* [*Corp.*], the [United States Supreme] Court held that an Oklahoma court could not assert jurisdiction over a New York car dealer just because a car it sold later caught fire in Oklahoma. . . . But in so doing, [the court] contrasted the dealer's position to that of two other defendants—Audi, the car's manufacturer, and Volkswagen, the car's nationwide importer (neither of which contested jurisdiction): '[I]f the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in [several or all] other [s]tates, it is not unreasonable to subject it to suit in one of those [s]tates if its allegedly defective merchandise has there been the source of injury to its owner or to others.' '' (Citation omitted.) *Ford Motor Co.* v. *Montana Eighth Judicial District Court*, supra, 141 S. Ct. 1027.

Adams *v.* Aircraft Spruce & Specialty Co.

of the "arise out of or relate to" element of specific jurisdiction to require a causal link between the defendant's contacts with the forum and the underlying controversy.[13] (Emphasis omitted; internal quotation marks omitted.) Id., 1026–27; see id., 1032 (Alito, J., concurring in the judgment) ("[t]hese cases can and should be decided without any alteration or refinement of our case law on specific personal jurisdiction"). The court explained that this element was not a single, unified standard controlled by the "arise out of" language but, instead, was a disjunctive one—the plaintiff's claim must *either* arise out of *or* relate to the defendant's activity in the forum state. Id., 1026. Although "arise out of" required a causal connection, "relate to" did not. (Internal quotation marks omitted.) Id. The court pointed to specific jurisdiction over the foreign manufacturer and importer in *World-Wide Volkswagen Corp.* as an example of the latter. Id., 1027. The court emphasized that the " 'relate to' [part of the standard] incorporates real limits, as it must to adequately protect

---

[13] Before the United States Supreme Court issued its decision in *Ford Motor Co.*, there had been a split among lower federal and state courts as to whether specific jurisdiction required a causal connection between the defendant's forum contacts and the controversy, and, if so, what type of causal connection. Three approaches emerged, one requiring proximate cause, one requiring only "but for" causation, and one requiring a "substantial" connection. (Internal quotation marks omitted.) *Employers Mutual Casualty Co.* v. *Bartile Roofs, Inc.*, 618 F.3d 1153, 1160–61 (10th Cir. 2010). "The 'substantial connection' approach [was] the least restrictive of the three approaches and merely require[d] 'the tie between the defendant's contacts and the plaintiff's claim [to be] close enough to make jurisdiction fair and reasonable.' *O'Connor* v. *Sandy Lane Hotel Co.*, 496 F.3d 312, 318–20 (3d Cir. 2007)." *Employers Mutual Casualty Co.* v. *Bartile Roofs, Inc.*, supra, 1161 n.6. The United States Supreme Court's decision in *Ford Motor Co.* notably neither employed the term "substantial connection" when explicating the "relates to" inquiry nor cited to any case in which a court had done so. The court previously had, on occasion, used this term in other cases— outside the context of product liability—to address the necessary link between the defendant's forum contacts and the litigation. See, e.g., *Walden* v. *Fiore*, supra, 571 U.S. 284; *McGee* v. *International Life Ins. Co.*, 355 U.S. 220, 223, 78 S. Ct. 199, 2 L. Ed. 2d 223 (1957).

Adams *v.* Aircraft Spruce & Specialty Co.

defendants foreign to a forum''; id., 1026; but declined to elaborate on the contours of those limits. See id., 1033–34 (Alito, J., concurring in the judgment) (''without any indication what those limits might be, I doubt that the lower courts will find that observation terribly helpful''); id., 1035 (Gorsuch, J., concurring in the judgment) (criticizing majority's vague new rule and asserting that new test may prove more forgiving than old causation rule in some cases and more demanding in other cases).

The court's application of the ''relate to'' standard in *Ford Motor Co.* did, however, provide some guidance. The court first laid out Ford's systematic marketing, sales, and servicing efforts in both forums in which suit was brought, through which Ford sought to encourage residents of those states to buy Ford vehicles, including the two models involved in the cases, and to become lifelong Ford drivers. Id., 1028. The court then turned to ''*how all this Montana- and Minnesota-based conduct relates to the claims in these cases*, brought by state residents in Montana's and Minnesota's courts.'' Id. The court explained: ''Each plaintiff's suit, of course, arises from a car accident in one of those [s]tates. In each complaint, the resident-plaintiff alleges that a defective Ford vehicle—an Explorer in one, a Crown Victoria in the other—caused the crash and resulting harm. And as just described, Ford had advertised, sold, and serviced those two car models in both [s]tates for many years. (Contrast a case, which we do not address, in which Ford marketed the models in only a different [s]tate or region.) In other words, Ford had systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those [s]tates. So there is a strong 'relationship among the defendant, the forum, and the litigation'— the 'essential foundation' of specific jurisdiction. *Helicopteros* [*Nacionales de Colombia, S.A.* v. *Hall*, 466 U.S.

Adams *v.* Aircraft Spruce & Specialty Co.

408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)].''[14]
*Ford Motor Co.* v. *Montana Eighth Judicial District Court*, supra, 141 S. Ct. 1028.

The court in *Ford Motor Co.* also demonstrated how its analysis in that case was consistent with its decision in *Bristol-Myers*. Like its approach in *Bristol-Myers*, the court in *Ford Motor Co.* underscored that the jurisdictional inquiry required consideration of "two sets of values": (1) "treating defendants fairly," and (2) "protecting interstate federalism." (Internal quotation marks omitted.) Id., 1025. With respect to fairness to the defendant, the court explained that the forum states' "assistance to Ford's in-state business creates reciprocal obligations—most relevant here, that the car models Ford so extensively markets in Montana and Minnesota *be safe for their citizens to use there.*" (Emphasis added.) Id., 1030. With respect to interstate federalism, the court first determined that Montana and Minnesota had "significant interests" at stake in the litigation, whereas, in the states where Ford claimed suit should have been brought, there was a "less significant 'relationship among the defendant, the forum, and the litigation.' " Id. The court then pointed out that, in *Bristol-Myers*,

---

[14] We note that the product at issue in the present case, like the products at issue in *Ford Motor Co.*, was designed for use in interstate travel and thus the alleged malfunction could have occurred anywhere outside the state where the product was sold. The court in *Ford Motor Co.* made no mention of this fact. Although the underlying Montana Supreme Court decision emphasized this fact, that court relied on it as further evidence of foreseeability of suit in the forum and made clear that foreseeability of suit is a requirement of personal jurisdiction in addition to the case-linkage element of specific jurisdiction. See *Ford Motor Co.* v. *Montana Eighth Judicial District Court*, 395 Mont. 478, 490–91, 443 P.3d 407 (2019), aff'd,
U.S. , 141 S. Ct. 1017, 209 L. Ed. 2d 225 (2021); see also *World-Wide Volkswagen Corp.* v. *Woodson*, supra, 444 U.S. 295 ("It is argued . . . that because an automobile is mobile by its very design and purpose it was 'foreseeable' that the [respondents'] Audi would cause injury in Oklahoma. Yet 'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the [d]ue [p]rocess [c]lause.").

Adams *v.* Aircraft Spruce & Specialty Co.

"the forum [s]tate, and the defendant's activities there, lacked any connection to the plaintiffs' claims. . . . In short, the plaintiffs [in *Bristol-Myers*] were engaged in forum-shopping—suing in California because it was thought plaintiff-friendly, even though their cases had no tie to the [s]tate. . . . [By contrast], the plaintiffs [in *Ford Motor Co.*] are residents of the forum [s]tates. They used the allegedly defective products in the forum [s]tates. And they suffered injuries when those products malfunctioned in the forum [s]tates. In sum, each of the plaintiffs brought suit in the most natural [s]tate— based on an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that [took] place there." (Citations omitted; internal quotation marks omitted.) Id., 1031.

*Ford Motor Co.* definitively answered the question of whether specific jurisdiction always requires a causal connection between the defendant's forum contacts and the underlying controversy but left many other questions in its wake. See P. Borchers et al., "*Ford Motor Co.* v. *Montana Eighth Judicial District*: Lots of Questions, Some Answers," 71 Emory L.J. Online 1, 9, 19–26 (2021); R. Freer, "From Contacts to Relatedness: Invigorating the Promise of 'Fair Play and Substantial Justice' in Personal Jurisdiction Doctrine, 73 Ala. L. Rev. 583, 600–603 (2022); M. Vitiello, supra, 57 Tulsa L. Rev. 397, 423–26. What does clearly emerge from *Bristol-Myers* and *Ford Motor Co.* is that, whereas the purposeful availment element of specific jurisdiction focuses exclusively on whether the *defendant* has a sufficiently meaningful affiliation with the forum, the case-linkage element focuses on whether the *plaintiff's specific claim* is sufficiently connected to the defendant's forum contacts. See P. Borchers et al., supra, 3; R. Freer, supra, 596. The case-linkage element therefore considers only those forum contacts of the defendant that have a connection to the specific claim brought by the plaintiff.

Adams *v.* Aircraft Spruce & Specialty Co.

See *Goodyear Dunlop Tires Operations*, *S.A.* v. *Brown*, supra, 564 U.S 931 n.6 ("even regularly occurring sales of a product in a [s]tate do not justify the exercise of jurisdiction over a claim unrelated to those sales"); *Brothers & Sisters in Christ, LLC* v. *Zazzle, Inc.*, 42 F.4th 948, 952 (8th Cir. 2022) ("in assessing specific jurisdiction, we look only to [the defendant's] contacts with [the forum] related to [the plaintiff's] claims"); *Hepp* v. *Facebook*, 14 F.4th 204, 208 (3d Cir. 2021) ("[The plaintiff's] allegations focus on how [the defendants] purposefully availed themselves of the [forum state's] market. But those contacts do not relate to this litigation. . . . [T]he alleged contacts do not relate to misappropriation, and the alleged misappropriation does not relate to any of the contacts.").

As one commentator explained: "The relatedness [i.e., case-linkage] analysis reflects a profound truth: with specific jurisdiction, the forum does not exercise regulatory power over the defendant per se, but over some aspect of the defendant's conduct or activity— conduct or activity that takes place in *or causes an effect in the forum*." (Emphasis added.) R. Freer, supra, 73 Ala. L. Rev. 597. Interstate federalism concerns require that conduct or activity to provide the forum with a material interest in the litigation. See *Ford Motor Co.* v. *Montana Eighth Judicial District Court*, supra, 141 S. Ct. 1025, 1030–31; *Bristol-Myers Squibb Co.* v. *Superior Court*, supra, 137 S. Ct. 1780–81.

Most lower federal and state courts considering case linkage in the context of a product liability claim have interpreted *Ford Motor Co.* to require forum contacts pertaining to the specific product model at issue in the litigation.[15] This interpretation is a reflection of the

[15] See, e.g., *LNS Enterprises LLC* v. *Continental Motors, Inc.*, 22 F.4th 852, 864 (9th Cir. 2022); *Anthony* v. *Chromalox, Inc.*, Docket No. 2:20-CV-202-TLS-APR, 2022 WL 3027767, *6 (N.D. Ind. August 1, 2022); *Lishman* v. *Air & Liquid Systems Corp.*, Docket No. 21-cv-001570, 2022 WL 1085163, *3 (N.D. Ill. April 11, 2022); *Specialized Transport & Rigging, LLC* v. *National Union Fire Ins. Co. of Pittsburgh*, Docket No. 3:20-cv-00188-TMB, 2022 WL

Adams *v.* Aircraft Spruce & Specialty Co.

court's emphasis in *Ford Motor Co.* on the fact that Ford's relevant forum contacts (marketing, sales, and servicing) related to the very vehicle models that had malfunctioned and caused the plaintiffs' injuries in the forum;[16] see *Ford Motor Co.* v. *Montana Eighth Judicial District Court*, supra, 141 S. Ct. 1022, 1028; and the "[c]ontrast" it drew to a case in which Ford "marketed the models in only a different [s]tate or region."[17] Id.,

603034, *7 (D. Alaska February 28, 2022); *Sullivan* v. *LG Chem, Ltd.*, 585 F. Supp. 3d 992, 1005 (E.D. Mich. 2022), appeal filed (6th Cir. March 15, 2022) (No. 22-1203); *Dodd* v. *Textron, Inc.*, Docket No. 3:21-cv-5177 BHS-TLF, 2022 WL 392442, *5 (W.D. Wn. February 9, 2022); *SUEZ Water New York Inc.* v. *E.I. du Pont de Nemours & Co.*, 578 F. Supp. 3d 511, 531–32 (S.D.N.Y. 2022); *Wade* v. *Kenan Advantage Group, Inc.*, Docket No. 20-18155, 2021 WL 4704962, *8 (D.N.J. October 8, 2021); *Murphy* v. *Viad Corp.*, Docket No. 21-10897, 2021 WL 4504229, *5–7 (E.D. Mich. October 1, 2021); *Avicolli* v. *BJ's Wholesale Club, Inc.*, supra, 2021 WL 3471167, *5; *Robinson Helicopter Co., Inc.* v. *Gangapersaud*, 346 So. 3d 134, 144 (Fla. App. 2022); *Cox* v. *HP Inc.*, 317 Or. App. 27, 35–36, 504 P.3d 52, review denied, 369 Or. 705, 509 P.3d 114 (2022); see also *Hood* v. *American Auto Care, LLC*, 21 F.4th 1216, 1224 (10th Cir. 2021) (applying similar principle to statutory tort action).

[16] "Ford did substantial business in the [s]tate—among other things, advertising, selling, and servicing *the model of vehicle the suit claims is defective*." (Emphasis added.) *Ford Motor Co.* v. *Montana Eighth Judicial District Court*, supra, 141 S. Ct. 1022. "By every means imaginable—among them, billboards, TV and radio spots, print ads, and direct mail—Ford urges Montanans and Minnesotans to buy its vehicles, *including* (*at all relevant times*) *Explorers and Crown Victorias*. Ford cars—*again including those two models*—are available for sale, whether new or used, throughout the [s]tates, at [thirty-six] dealerships in Montana and [eighty-four] in Minnesota." (Emphasis added.) Id., 1028. "In each complaint, the resident-plaintiff alleges that a defective Ford vehicle—an Explorer in one, a Crown Victoria in the other—caused the crash and resulting harm. And as just described, Ford had advertised, sold, and serviced *those two car models* in both [s]tates for many years. . . . In other words, Ford had systematically served a market in Montana and Minnesota *for the very vehicles that the plaintiffs allege malfunctioned and injured them in those* [*s*]*tates*. So there is a strong 'relationship among the defendant, the forum, and the litigation'—the 'essential foundation' of specific jurisdiction." (Emphasis added.) Id.

[17] Justice Kagan, author of the majority opinion in *Ford Motor Co.*, raised this subject at oral argument in that case. See B. Day, "*Ford Motor Company* v. *Montana Eighth Judicial District Court*: Redefining the Nexus Requirement for Specific Jurisdiction," 16 Duke J. Const. L. & Pub. Policy Sidebar, 1, 15 (2021) (noting Justice Kagan's question to respondent plaintiffs as to

Adams *v.* Aircraft Spruce & Specialty Co.

1028; see also *Bristol-Myers Squibb Co.* v. *Superior Court*, supra, 137 S. Ct. 1781 (noting that research conducted in California by BMS on "matters unrelated to Plavix" was not relevant to specific jurisdiction analysis); *Goodyear Dunlop Tires Operations, S.A.* v. *Brown*, supra, 564 U.S. 921 (noting that, although small percentage of petitioners' tires were distributed within forum state by other affiliates of United States parent company, "the type of tire involved in the accident . . . was never distributed in [the forum state]").

A few courts have interpreted *Ford Motor Co.* to allow for a broader view of the defendant's forum contacts that may be sufficiently related to the litigation, at least in appropriate cases. See, e.g., *Sibley* v. *Air & Liquid Systems Corp.*, Docket No. 20-cv-07697-MMC, 2021 WL 2688819, *3 (N.D. Cal. June 30, 2021); *Godfried* v. *Ford Motor Co.*, Docket No. 1:19-cv-00372-NT, 2021 WL 1819696, *7 (D. Me. May 6, 2021); *Harding* v. *Cordis Corp.*, 196 N.E.3d 514, 523 (Ill. App. 2021); *Vertex Industrial, Inc.* v. *State Farm Lloyds*, Docket No. 03-20-00574-CV, 2021 WL 3684263, *6 (Tex. App. August 20, 2021). This less restrictive interpretation appears to rest on the United States Supreme Court's pointed statement in *Ford Motor Co.* that it was not addressing a case in which Ford marketed the models only outside of the forum and the court's references to Ford's marketing of the Ford brand in the forum. See *Sibley* v. *Air & Liquid Systems Corp.*, supra, *3; *Godfried* v. *Ford Motor Co.*, supra, *5, *7. These courts have indicated that forum activity relating to other models of the same product type could provide support for specific jurisdiction, if there is no basis to conclude that there is a

how court should define which products would be similar enough to find specific jurisdiction over national company selling many types of different products and respondents' reply urging that test should be focused on specific models of product, which would allow defendants to structure their conduct within state based on specific model of products sold in state).

Adams *v.* Aircraft Spruce & Specialty Co.

material difference between the models. See, e.g., *God-fried* v. *Ford Motor Co.*, supra, *5 n.5 (noting that defendant offered no evidence to show model at issue was sufficiently different from models marketed in forum state "as to warrant [a] distinction" with respect to specific jurisdiction).

This broader view of related forum contacts has been applied thus far only in cases in which the defendant is the product manufacturer. Although not stated expressly, these courts appear to have presumed that, in the absence of evidence to the contrary, other models of the same product type that were produced by the defendant manufacturer could or would share the same design defect, manufacturing defect, or defective warnings as the particular model at issue in the litigation. Our research revealed no case, however, in which sales, marketing, or servicing of a *similar* product by a *different* manufacturer provided the requisite connection. Nor did it reveal any case in which a defendant manufacturer's sales or marketing of products of a different sort than the one involved in the litigation provided the necessary connection.

It appears that the plaintiffs' theory in the present case rests on such attenuated activities. They broadly allege in their complaint that the defendant marketed and sold replacement aircraft engine parts to Connecticut customers, including carburetors. The defendant admits to the sale of twenty-five carburetors to Connecticut customers between 2009 and 2017, and it is fair to infer that some or all of these were overhauled. The plaintiffs do not allege, however, that the defendant marketed and sold *defective* carburetors to Connecticut customers. Cf. *Ditter* v. *Subaru Corp.*, Docket No. 20-cv-02908-PAB-MEH, 2022 WL 889102, *5 (D. Colo. March 25, 2022). They allege that the overhauled replacement carburetor at issue (identified in the complaint only as part number 10-4894-1) was defectively designed. This

Adams *v.* Aircraft Spruce & Specialty Co.

allegation, construed liberally, fairly implies that all other overhauled carburetors bearing that part number would be similarly defective. It does not fairly imply that the defendant marketed, sold, and/or serviced defective part number 10-4894-1 or any other products that are *similarly defective* in Connecticut. Significantly, the defendant is not the product manufacturer but, rather, a dealer and distributor of aviation products manufactured by others. The subject carburetor was overhauled by Kelly Aerospace, and, in that sense, Kelly Aerospace stands in the role of manufacturer. There is no allegation that the defendant exclusively distributes Kelly Aerospace products or that part number 10-4894-1 is the only carburetor produced by Kelly Aerospace. Every allegation in the complaint referring to the sale of part number 10-4894-1 refers to it as a singular occurrence. In sum, there is no allegation or evidence that the defendant distributed, sold, marketed, or otherwise placed into the stream of commerce any similarly defective products in this state.

To be fair to the plaintiffs, the United States Supreme Court's decision in *Ford Motor Co.* emphasizing Ford's forum conduct in relation to the specific model involved in the litigation was issued after the defendant's motion to dismiss was granted in the present case. The plaintiffs may not have appreciated the relevance of this type of information when they conducted jurisdictional discovery. They also may not have addressed this aspect of *Ford Motor Co.* in their appellate brief to this court because the defendant never raised it in its appellate brief. We need not consider, however, whether it would be appropriate to overlook this uncontested deficiency or to remand the case to the trial court to allow the plaintiffs to engage in further jurisdictional discovery to determine whether they could remedy this deficiency. Even if there was an allegation or evidence that the defendant had sold the same or a similarly defective

Adams *v.* Aircraft Spruce & Specialty Co.

product in Connecticut, such evidence would not be sufficient to support specific personal jurisdiction under the facts of the present case.

There was no question in *Bristol-Myers* that BMS had marketed and sold the *exact* same product in the forum that allegedly caused the nonresident plaintiffs' injuries. Yet that activity alone was insufficient to establish the necessary connection to the nonresident plaintiffs' claims. The present case is distinguishable from *Bristol-Myers* in that the plaintiffs' decedent in this case was a resident of Connecticut, but that connection, without more, does not establish the required case linkage on this record. *Bristol-Myers*, *Ford Motor Co.*, and every other subsequently decided lower court case we have seen confirm that there must be some activity or occurrence in the forum that is material to the *specific* litigation. In *Bristol-Myers*, the court pointed to the fact that the nonresident plaintiffs "were not *prescribed* Plavix in California, did not *purchase* Plavix in California, did not *ingest* Plavix in California, and were not *injured* by Plavix in California." (Emphasis added.) *Bristol-Myers Squibb Co.* v. *Superior Court*, supra, 137 S. Ct. 1781. In *Ford Motor Co.*, the court relied on the plaintiffs' *use* of the allegedly defective vehicles in their respective forums and the injury producing *malfunction* of those products in the forums as the activities that connected the defendant, the forum, and the litigation. See *Ford Motor Co.* v. *Montana Eighth Judicial District Court*, supra, 141 S. Ct. 1030–31.

The integration of interstate federalism concerns into the case-linkage inquiry in *Bristol-Myers* and *Ford Motor Co.* requires an activity or occurrence in the forum that is sufficiently material to the litigation and, in turn, to the forum's interest in that litigation.[18] See

[18] Some commentators have expressed concerns about the United States Supreme Court's recent emphasis on interstate federalism in its case-linkage inquiry. One complaint leveled is that protecting a *state's* interest in the litigation is not a concern of the due process clause. See M. Vitiello, supra,

Adams *v.* Aircraft Spruce & Specialty Co.

*Lawson* v. *Simmons Sporting Goods, Inc.*, 569 S.W.3d 865, 871–72 (Ark. 2019) (negligence claims did not have sufficient relationship to forum, despite defendant's advertising to forum residents, because allegedly negligent act and ensuing injury occurred outside of forum); *Martins* v. *Bridgestone Americas Tire Operations, LLC*, 266 A.3d 753, 760–61 (R.I. 2022) (even if defendants purposefully availed themselves of laws of forum state, resident plaintiff's claims did not arise out of or relate to defendants' contacts because plaintiff's injury allegedly caused by defective product occurred outside of home forum and product was manufactured and installed outside of home forum); *Devon Energy Corp.* v. *Moreno*, Docket No. 01-21-00084-CV, 2022 WL 547641, *3 (Tex. App. February 24, 2022) ("[f]or a cause of action to arise from or relate to purposeful forum contacts, there must be a substantial connection between those contacts and the *operative facts of the litigation*" (empha-

---

57 Tulsa L. Rev. 399 ("[m]any legal scholars find the [c]ourt's assertion that due process advances states' rights to be ludicrous" (emphasis omitted)); id., 417 ("[t]o date, the [c]ourt seems unable to offer a compelling argument for the role of sovereignty in its due process analysis"). But see H. Erichson et al., supra, 105 Minn. L. Rev. Headnotes 75–76 (asserting that principle of interstate federalism does implicate defendant's due process rights). Indeed, Justices Ginsburg, Breyer, and Kagan had previously expressed this view; see, e.g., J. *McIntyre Machinery, Ltd.* v. *Nicastro*, 564 U.S. 873, 891, 131 S. Ct. 2780, 180 L. Ed. 2d 765 (2011) (Breyer, J., concurring in the judgment); id., 899–900 (Ginsburg, J., dissenting); but joined the majority opinion in *Bristol-Myers* emphasizing the significance of interstate federalism in personal jurisdiction. See *Bristol-Myers Squibb Co.* v. *Superior Court*, supra, 137 S. Ct. 1777.

Another concern articulated is that the court's integration of interstate federalism into the case-linkage inquiry seems to conflate that inquiry with the fairness inquiry, the latter historically considering the forum's interest in the litigation. See *Cox* v. *HP Inc.*, 368 Or. 477, 495 n.10, 492 P.3d 1245 (2021); P. Borchers et al., supra, 71 Emory L.J. Online 20–21; R. Freer, supra, 73 Ala. L. Rev. 603; M. Vitiello, supra, 57 Tulsa L. Rev. 416; see also footnote 9 of this opinion (enumerating factors relevant to fairness/reasonableness inquiry). Regardless of the merits of any these concerns, however, the plaintiffs in the present case make no argument that we have authority to, or should, craft a rule of our own choosing regardless of whether it conforms to the United States Supreme Court's recent case law.

Adams *v.* Aircraft Spruce & Specialty Co.

sis added; internal quotation marks omitted)); *Downing*
v. *Losvar*, 507 P.3d 894, 915–17 (Wn. App.), review
denied sub nom. *Downing* v. *Textron Aviation, Inc.*,
516 P.3d 384 (Wn. 2022) (product liability claim was
related to defendant's forum contacts involving its sale
and servicing of Cessna airplanes when Cessna plane
originally sold out of state was brought into forum and
crashed in forum).

The forum state's interest is at its zenith when either
tortious conduct is committed in the forum or tortious
injury occurs in the forum. See *Keeton* v. *Hustler Maga-*
*zine, Inc.*, supra, 465 U.S. 776 ("it is beyond dispute
that [a state] has a significant interest in redressing
injuries that actually occur in the [s]tate," as state has
"an especial interest in exercising judicial jurisdiction
over those who commit torts within its territory . . .
because torts involve wrongful conduct which a state
seeks to deter, and against which it attempts to afford
protection" (internal quotation marks omitted)); J.
*McIntyre Machinery, Ltd.* v. *Nicastro*, 564 U.S. 873,
899, 131 S. Ct. 2780, 180 L. Ed. 2d 765 (2011) (Ginsburg,
J., dissenting) (citing United States Supreme Court case
and federal venue statute supporting proposition that,
among all states, "the [s]tate in which the injury
occurred would seem most suitable for litigation of a
[product] liability tort claim"); H. Erichson et al., supra,
105 Minn. L. Rev. Headnotes 82 ("[W]hile tortious con-
duct by an actor within a state can be one basis for a
state's legitimate interest in providing a forum for
redress, it is not the only basis. Another basis is the
state's interest in tortious injury within a state."
(Emphasis omitted.)); see also H. Erichson et al., supra,
82–83 n.179 (noting that, under common law, "a tort is
not committed until potentially injurious conduct is
actualized in injury" and that "a proper understanding of
sovereignty, territoriality, and tort law in our federalist
system requires recognition that, in an important sense,

Adams *v.* Aircraft Spruce & Specialty Co.

a defendant commits a tort in the state where wrongful acts ripen into actual injury''); J. Jacobson, Note, "Getting 'Arising Out of' Right: *Ford Motor Company* and the Purpose of the 'Arising Out of' Prong in the Minimum Contacts Analysis,'' 97 N.Y.U. L. Rev. 315, 331 (2022) (explaining similarity between personal jurisdiction inquiry and choice of law inquiry, noting that formative notions of both "hinged on place: [w]here an act occurred bore on a state's authority to exert its coercive power and substantive law over a litigant'' (emphasis omitted)).

That having been said, we do not interpret *Bristol-Myers* and *Ford Motor Co.* to mean that the activity or occurrence will be sufficiently related and material only when the injury occurs in the forum state. The principles articulated in these cases and their predecessors could support the exercise of specific jurisdiction if other material activities or occurrences relating to the litigation took place in the forum. See, e.g., *Duffy* v. *Kaman Aerospace Corp.*, supra, 590 F. Supp. 3d 1326–27 (Montana court could exercise specific jurisdiction in negligence action arising from helicopter accident that occurred in Oregon and injured Montana employee when defendant marketed itself to Montana company that purchased allegedly defective part, defendant had previously shipped such parts to company, and part that allegedly caused helicopter crash was shipped to Montana); *Dodd* v. *Textron, Inc.*, Docket No. 3:21-cv-5177 BHS-TLF, 2022 WL 392442, *4–5 (W.D. Wn. February 9, 2022) (Washington court could exercise specific jurisdiction in negligence and product liability action brought by Washington residents arising from accident in Oregon involving off-road vehicle purchased in Idaho when defendant sells and advertises same model of vehicle in forum, and plaintiffs purchased vehicle after seeing that advertisement and test driving same model in forum, used and stored vehicle in forum, and "just

Adams *v.* Aircraft Spruce & Specialty Co.

happened to suffer injuries while on a trip [out of state]''); *English* v. *Avon Products, Inc.*, 206 App. Div. 3d 404, 405, 407–408, 169 N.Y.S.3d 300 (2022) (New York court could exercise specific jurisdiction in product liability action brought by Texas resident when plaintiff used allegedly defective talcum powder during regularly occurring business travel stays in New York and product was marketed and sold nationally); *Motor Coach Industries, Inc.* v. *Del Refugio*, Docket No. 14-20-00825-CV, 2022 WL 3725144, *5–6 (Tex. App. August 30, 2022) (Texas court could exercise specific jurisdiction in action alleging product liability, breach of warranty, and negligence arising from bus accident that occurred in Mexico and injured Texas resident passengers when Texas company purchased bus from defendant and used bus to transport individuals from Texas to Mexico, and defendant facilitated bus repairs in Texas, sent product bulletins with bus safety information to Texas customers, and sent warranty payments to Texas customers); see also *Southwire Co., LLC* v. *Sparks*, Docket No. 02-21-00126-CV, 2021 WL 5368692, *11 (Tex. App. November 18, 2021) (''To hold that a Texas court did not have jurisdiction when the [plaintiffs] used the [recreational vehicle] for its intended purpose and traveled in it, possibly outside the state, would mean that Texas residents who purchase a product in Texas designed to be used as a mobile residence would be left without the protections of the Texas courts should they be injured while using that product for its intended purpose. Holding that such a fortuitous fact frees a defendant from the reach of Texas courts disregards the true bases for jurisdiction—that when a Texas resident is injured by a product that he was sold by a defendant that directed its efforts at a Texas market, the Texas resident should have recourse in Texas courts.'').[19]

[19] Some courts appear, however, to have interpreted *Ford Motor Co.* to limit personal jurisdiction in a product liability action to the locus of the accident when there is no causal connection to the defendant's forum contacts. See, e.g., *Bibbs* v. *Molson Coors Beverage Co. USA, LLC*, Docket No.

Adams *v.* Aircraft Spruce & Specialty Co.

In the present case, no activity or occurrence relevant to the plaintiffs' strict product liability claim against the defendant took place in Connecticut. The subject carburetor was not overhauled or sold in Connecticut, it was not installed or used in Connecticut, there is no claim that that any other product with the same alleged defect was ever marketed or sold in Connecticut, and, importantly, the alleged malfunction did not occur in Connecticut.

The only fact that favorably distinguishes the present case from *Bristol-Myers* is the forum residence of the plaintiffs and the decedent. No doubt a plaintiff's residence in the forum state diminishes the forum shopping concern that the United States Supreme Court expressed with respect to the nonresident plaintiffs in *Bristol-Myers*. See *Ford Motor Co.* v. *Montana Eighth*

4:22-cv-0200-P, 2022 WL 2900275, *5 (N.D. Tex. July 22, 2022) (emphasizing that "the location of the injury was crucial to asserting jurisdiction in *Ford* [*Motor Co.*]" because claim at issue there was product liability, whereas location of injury was not dispositive in negligence action when defendant could have warned plaintiff of potential danger or hazardous condition of trailer load at any point along route); *Barber* v. *DePuy Synthes Products, Inc.*, Docket No. 21-00923 (RBK/KMW), 2021 WL 3076933, *2 n.1 (D.N.J. July 21, 2021) (interpreting *Ford Motor Co.* as "requir[ing] the injury in question to occur in the [s]tate where the [product liability] lawsuit is brought"); *Martins* v. *Bridgestone Americas Tire Operations, LLC*, supra, 266 A.3d 761 ("[a]lthough the decedent was a resident of Rhode Island whose death ultimately occurred in Rhode Island [following a truck accident in Connecticut], those facts alone are not enough; it was key in *Ford* [*Motor Co.*] that the injury also occurred in the forum state").

In *Wallace* v. *Yamaha Motors Corp, U.S.A.*, Docket No. 19-2459, 2022 WL 61430, *4 (4th Cir. January 6, 2022), the Court of Appeals for the Fourth Circuit also emphasized the jurisdictional significance of the fact that the accident had occurred outside the forum state, South Carolina, in concluding that specific jurisdiction was lacking. The court, however, also pointed to the fact that "the record remains silent as to how the motorcycle—originally purchased by a consumer from an authorized . . . dealership [of the defendant] in Kansas—ended up in [the plaintiff's home forum] South Carolina"; id.; which may or may not have been intended to leave the door open for events relating to the specific product other than the accident to establish case linkage.

Adams *v.* Aircraft Spruce & Specialty Co.

*Judicial District Court*, supra, 141 S. Ct. 1031; see also
M. Vitiello, "Due Process and the Myth of Sovereignty,"
50 U. Pac. L. Rev. 513, 535 (2019) (asserting that United
States Supreme Court's decisions generally favor defen-
dant forum shopping over plaintiff's forum selection).
Moreover, a forum "has a manifest interest in providing
effective means of redress for its residents . . . ."
*McGee* v. *International Life Ins. Co.*, 355 U.S. 220, 223,
78 S. Ct. 199, 2 L.Ed.2d 223 (1957).

The United States Supreme Court's cases make clear,
however, that forum residence may *bolster* other factors
that support specific jurisdiction but is not a sufficient
basis, in and of itself, to forge the necessary connection
between the defendant's forum contacts and the spe-
cific litigation. See *Ford Motor Co.* v. *Montana Eighth
Judicial District Court*, supra, 141 S. Ct. 1031–32; *Good-
year Dunlop Tires Operations, S.A.* v. *Brown*, supra,
564 U.S. 929 n.5; *Helicopteros Nacionales de Colombia,
S.A.* v. *Hall*, supra, 466 U.S. 411–12; see also *Bristol-
Myers Squibb Co.* v. *Superior Court*, supra, 137 S. Ct.
1785 n.1 (Sotomayor, J., dissenting) (explaining that
court had categorized plaintiffs in that case as " 'resi-
dents' " or " 'nonresidents' " as "a convenient short-
hand," and not because that distinction, in and of itself,
was particularly significant in court's jurisdictional
analysis).

The court's decision in *Ford Motor Co.*, therefore,
acknowledged the plaintiffs' status as forum residents
but pointed to additional facts to explain how Ford's
conduct in the forum related to the claims at issue:
each plaintiff's suit arose from a car accident in one of
the forum states, and Ford had systematically adver-
tised, sold, and serviced the two car models involved
in those accidents in both states for many years. *Ford
Motor Co.* v. *Montana Eighth Judicial District Court*,
supra, 141 S. Ct. 1028. The court confirmed that these
two facts were the essential predicates to jurisdiction

Adams *v.* Aircraft Spruce & Specialty Co.

by characterizing that case as "identical" to the basis for specific jurisdiction in *World-Wide Volkswagen Corp.*; id., 1027; a case in which the plaintiffs were not residents of the forum in which the injury occurred and in which suit was brought.[20] See *World-Wide Volkswagen Corp.* v. *Woodson*, supra, 444 U.S. 288, 295.

Putting aside the problem that the plaintiffs in the present case do not allege sales of similarly defective products in the forum, their theory would have us interpret the United States Supreme Court's recent cases as treating the locus of the accident (or the locus of other activity connected to sale or use of the defective product) as superfluous to case linkage, as long as the plaintiff is a resident of the forum. The foregoing analysis explains why we must reject that theory in the wake of *Bristol-Myers* and *Ford Motor Co.* On this record, without more, the residency of the plaintiffs' decedent does not provide the nexus to Connecticut necessary to establish personal jurisdiction over the defendant.

[20] A line of lower federal and state court cases that predate *Bristol-Myers* and *Ford Motor Co.*, which applied a substantial connection test for specific jurisdiction, concluded that jurisdiction could be exercised when the plaintiffs brought tort actions in their home forum for injuries sustained outside that forum when the defendant had directed its marketing efforts to the home forum's citizens (or the plaintiffs particularly) to induce them to undertake activity outside the home forum that resulted in the ensuing injury. See, e.g., *Chew* v. *Dietrich*, 143 F.3d 24, 30–31 (2d Cir.), cert. denied, 525 U.S. 948, 119 S. Ct. 373, 142 L. Ed. 2d 308 (1998); *Nowak* v. *Tak How Investments, Ltd.*, 94 F.3d 708, 715–16 (1st Cir. 1996), cert. denied, 520 U.S. 1155, 117 S. Ct. 1333, 137 L. Ed. 2d 493 (1997); *Shoppers Food Warehouse* v. *Moreno*, 746 A.2d 320, 335–36 (D.C.), cert. denied, 530 U.S. 1270, 120 S. Ct. 2737, 147 L. Ed. 2d 997 (2000). The present case does not involve a direct marketing campaign to Connecticut residents generally or to the plaintiffs (or their decedent) specifically to induce them to purchase the defendant's products or to patronize aircraft that use those products. We therefore have no occasion to express any view as to the significance of the plaintiff's residence in such cases or as to the continuing vitality of this line of cases. We observe, however, that the majority of these cases appear to be ones in which the defendant's forum contacts could establish "but for" causation. See *Ford Motor Co.* v. *Montana Eighth Judicial District Court*, supra, 141 S. Ct. 1035–36 (Gorsuch, J., concurring in the judgment).

Adams *v.* Aircraft Spruce & Specialty Co.

The plaintiffs nevertheless contend that this court previously articulated a standard for establishing the requisite connection to support personal jurisdiction when no direct causal connection is required that is consistent with *Ford Motor Co.*—"reasonably foreseeable that, as a result of [its conduct in the forum], the defendant could be sued in Connecticut by a solicited person on a cause of action similar to that now being brought by the plaintiffs." *Thomason* v. *Chemical Bank*, supra, 234 Conn. 296. The plaintiffs may be correct that *Ford Motor Co.* can be read to support this proposition. We say *may be* correct because it is unclear whether a "similar" cause of action under *Thomason* also would require the sale or marketing of the same or a similarly defective product in the forum.[21] More fundamentally, however, the plaintiffs' reliance on this standard is misplaced because the United States Supreme Court's decisions issued after *Thomason* make clear that foreseeability satisfies only one part of the personal jurisdiction inquiry. *Thomason* predates sea changes to personal jurisdiction jurisprudence: the narrowing of the scope of general jurisdiction and the elevation of interstate federalism in the specific jurisdiction inquiry. See C. Rhodes & C. Robertson, supra, 57 Harv. J. on Legis. 387–88, 389–90; G. Skinner, "Expanding General Personal Jurisdiction over Transnational Corporations for Federal Causes of Action," 121 Penn St. L. Rev. 617, 619–20 (2017); M. Vitiello, supra, 57 Tulsa L. Rev. 416–17; D. Wagner, "*Hertz* So Good: Amazon, General Jurisdiction's Principal Place of Business, and Contacts Plus

---

[21] Cases from other jurisdictions citing *Thomason* have also suggested that it was significant in *Thomason* that the defendant had solicited Connecticut consumers specifically, not just consumers generally. See, e.g., *West World Media, LLC* v. *Ikamobile Ltd.*, 809 F. Supp. 2d 26, 30–31 (D. Conn. 2011); *American Wholesalers Underwriting, Ltd.* v. *American Wholesale Ins. Group, Inc.*, 312 F. Supp. 2d 247, 256–57 (D. Conn. 2004); *Shoppers Food Warehouse* v. *Moreno*, 746 A.2d 320, 335–36 (D.C.), cert. denied, 530 U.S. 1270, 120 S. Ct. 2737, 147 L. Ed. 2d 997 (2000).

Adams *v.* Aircraft Spruce & Specialty Co.

As the Future of the Exceptional Case,'' 104 Cornell L. Rev. 1085, 1098, 1105–1106 (2019). The notion that the case linkage necessary to support specific jurisdiction can be established through the defendant's connections to a third party's litigation (actual or hypothetical) cannot be reconciled with the holding in *Bristol-Myers*. It is therefore irrelevant whether we believe that the *Thomason* standard is more consistent with *International Shoe Co.'s* fundamental precepts of ''fair play and substantial justice.'' (Internal quotation marks omitted.) *International Shoe Co.* v. *Washington*, supra, 326 U.S. 316.

The plaintiffs also overlook other problems with the *Thomason* standard. *Thomason* falls into a line of lower federal and state court cases under which the fact that the defendant's contacts in the forum were of a ''continuous and systematic'' nature obviated the need to show a direct causal connection between those contacts and the litigation. (Internal quotation marks omitted.) *Thomason* v. *Chemical Bank*, supra, 234 Conn. 288, 290, 300. The United States Supreme Court in *Daimler AG* v. *Bauman*, supra, 571 U.S. 137–38, subsequently rejected ''continuous and systematic'' contacts as a sufficient basis for general jurisdiction, which was at issue in *Thomason*.[22] Thereafter, in *Bristol-Myers*, the court

---

[22] The court in *Thomason* confronted the dilemma that the applicable long arm statute permitted the exercise of personal jurisdiction over a foreign corporation in connection with a cause of action ''arising out of'' business solicited in the state, and ''arises out of'' for purposes of the constitutional test for specific jurisdiction had been interpreted to require a causal connection between the defendant's forum contacts and the plaintiff's injuries. (Internal quotation marks omitted.) *Thomason* v. *Chemical Bank*, supra, 234 Conn. 287. The constitutional test for general jurisdiction, however, required no such causal connection. Id., 287–88. The court in *Thomason* examined various sources and concluded that the legislature did not intend for ''arising out of'' in the long arm statute to have the same meaning as those words have in the constitutional test because doing so would preclude our courts from exercising general jurisdiction. Id., 290. The court noted that it previously had observed that the legislature intended to exercise its full constitutional power over foreign corporations in cases falling within the statutorily designated causes of action. Id., 295. To reconcile the legislative

Adams *v.* Aircraft Spruce & Specialty Co.

made clear that the extensiveness of the defendant's contacts in the forum also did not justify a lesser connection to the forum for purposes of specific jurisdiction. See *Bristol-Myers Squibb Co.* v. *Superior Court*, supra, 137 S. Ct. 1778 (rejecting California Supreme Court's " 'sliding scale approach to specific jurisdiction' " under which " 'the more wide ranging the defendant's forum contacts, the more readily is shown a connection between the forum contacts and the claim' "). The court criticized the California court's approach, which shares common ground with this court's approach in *Thomason* for "resembl[ing] a loose and spurious form of general jurisdiction." Id., 1781; cf. *O'Connor* v. *Sandy Lane Hotel Co.*, *Ltd.*, 496 F.3d 312, 319–20 (3d Cir. 2007) (criticizing *Thomason* and other cases applying similar test for collapsing distinction between general and specific jurisdiction).

We therefore conclude that, although the *Thomason* standard, resting on the foreseeability of a similar cause of action, is consonant with the core due process concern of fairness, it is nonetheless inconsistent with United States Supreme Court's specific jurisdiction precedent, as presently articulated. *Thomason* was, at bottom, a case interpreting a provision in one of our long arm statutes to conform to the full extent of the constitutional limits of jurisdiction, as to the delineated causes of action. See footnote 22 of this opinion. Regardless of whether the plaintiffs are correct that rejection of the *Thomason* standard as a constitutional

decision to impose some limits on constitutionally permitted jurisdiction with its decision not to require a causal connection between the defendant's solicitation in the forum and the plaintiffs' action, the court interpreted the relevant provision of the long arm statute as follows: "[A] plaintiff's 'cause of action aris[es] . . . out of . . . business solicited in this state' if, at the time the defendant engaged in solicitation in Connecticut, it was reasonably foreseeable that, as a result of that solicitation, the defendant could be sued in Connecticut by a solicited person on a cause of action similar to that now being brought by the plaintiffs." Id., 296.

Adams *v.* Aircraft Spruce & Specialty Co.

standard will render the reach of our long arm statutes beyond constitutional limits in certain contexts, a question we do not address, we have no authority to adopt a more capacious standard for specific jurisdiction than that demanded by the United States Supreme Court.

The plaintiffs therefore have failed to establish that their claim against the defendant arises from or relates to the defendant's forum contacts. In the absence of such a connection, the trial court correctly concluded that the exercise of specific personal jurisdiction over the defendant would violate due process.

The judgment is affirmed.

In this opinion the other justices concurred.